# UNITED STATES *v.* ROBINSON

No. 86–937.   Argued November 3, 1987—Decided February 24, 1988

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, STEVENS, O'CONNOR, and SCALIA, JJ., joined.   BLACKMUN, J., filed an

opinion concurring in part and dissenting in part, *post*, p. 34. MARSHALL, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 37. KENNEDY, J., took no part in the consideration or decision of the case.

*Lawrence S. Robbins* argued the cause for the United States. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Weld,* and *Deputy Solicitor General Bryson.*

*Carolou P. Durham* argued the cause for respondent. With her on the brief was *Bart C. Durham III.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

During the course of respondent Robinson's mail fraud trial in the Middle District of Tennessee, his counsel urged in closing argument that the Government had not allowed respondent to explain his side of the story. The prosecutor during his summation informed the jury that respondent "could have taken the stand and explained it to you. . . ." App. 27. We hold that the comment by the prosecutor did not violate respondent's privilege to be free from compulsory self-incrimination guaranteed by the Fifth Amendment to the United States Constitution.

Following a jury trial in the United States District Court for the Middle District of Tennessee, respondent was convicted of two counts of mail fraud, 18 U. S. C. § 1341;[1] both counts involved arson-related insurance claims. The evidence at trial showed that respondent leased a truck stop in Guthrie, Kentucky, in 1979. The business deteriorated over the next several months. Two days after respondent increased the insurance coverage on the truckstop an explosion and fire destroyed the premises. A number of unusual

---

[1] Respondent was acquitted on two counts of making false statements to a bank for purposes of obtaining a loan, 18 U. S. C. § 1014, and the District Court dismissed at the close of the evidence two counts of making and possessing a destructive device, 26 U. S. C. § 5861.

circumstances suggested arson. Respondent subsequently submitted an insurance claim of $80,000.

Approximately one year later, respondent's home in Clarksville, Tennessee, was badly damaged by arson an hour after respondent had departed for California in a large truck filled with household furnishings. When interviewed by investigators, respondent denied setting fire to his house and explained that he had removed the household furnishings to take them to his daughter in California. Respondent filed with his insurance company a proof of loss claim of $200,000, including a $106,500 personal property claim. Certain property included in this claim was later discovered by authorities in respondent's California home.

Respondent did not testify at trial. In his closing argument to the jury, the theme of respondent's counsel was that the Government had breached its "duty to be fair." Several different times, counsel charged that the Government had unfairly denied respondent the opportunity to explain his actions.[2] Counsel concluded by informing the jury that respondent was not required to testify, and that although it would be natural to draw an adverse inference from respond-

---

[2] "By the way, all of those statements, I don't know how many statements we heard of Mr. Robinson, they were all about the arson. Did they ever give him a chance to explain about those sorts of things, about mail fraud?

"Did they ever give this man an opportunity in their many, many statements they took at the time to say, 'Well, I had two bedroom sets.'" App. 18.

"The furniture and clothing, all that clothing out on the lawn, . . . 'What about your clothing?' They never gave him a chance to explain." *Id.,* at 19.

"Now, would you like to get indicted for that, without the Government being fair, and being able to explain, have him explain before you, members of your own community, rather than before the agents?" *Ibid.*

"Now, here is what the Government, to be fair with the jury, should have done. They should have taken those items in the Kentucky inventory and just proved them. Why let the defendant disprove them, give him an opportunity to explain?" *Id.,* at 21.

ent's failure to take the stand, the jury could not and should not do so.

Following this closing and out of the presence of the jury, the prosecution objected to the remarks of defense counsel and contended that the defense had "opened the door." The court agreed, stating:

> ". . . I will tell you what, the Fifth Amendment ties the Government's hands in terms of commenting upon the defendant's failure to testify. But that tying of hands is not putting you into a boxing match with your hands tied behind your back and allowing him to punch you in the face.
>
> "That is not what it was intended for and not fair. I will let you say that the defendants had every opportunity, if they wanted to, to explain this to the ladies and gentlemen of the jury." App. 25.

Respondent did not object.

Following a short recess, the prosecutor gave his rebuttal summation. He began by stating that the Government had an obligation to "play fair" and had complied with that obligation in this case. Specifically, he stated:

> "[Defense counsel] has made comments to the extent the Government has not allowed the defendants an opportunity to explain. It is totally unacceptable.
>
> "He explained himself away on tape right into an indictment. He explained himself to the insurance investigator, to the extent that he wanted to.
>
> "He could have taken the stand and explained it to you, anything he wanted to. The United States of America has given him, throughout, the opportunity to explain." *Id.*, at 27.

Defense counsel did not object to this closing and did not request a cautionary instruction. Nonetheless, the court included in the jury instruction the admonition that "no infer-

ence whatever may be drawn from the election of a defendant not to testify." Tr. 694.

The United States Court of Appeals for the Sixth Circuit reversed respondent's convictions, finding that the prosecutor's comment had "deprived the defendant . . . of a fair trial under the Fifth Amendment and 18 U. S. C. § 3481."[3] 716 F. 2d 1095, 1096, 1097 (1983) (citing *Griffin* v. *California*, 380 U. S. 609 (1965), and *Wilson* v. *United States*, 149 U. S. 60 (1893)). The court held that because the prosecution's reference to respondent's failure to testify had been "direct," it did not matter that it was made in response to remarks by defense counsel. This Court granted certiorari, vacated that judgment of the Court of Appeals, and remanded for reconsideration in light of *United States* v. *Young*, 470 U. S. 1 (1985). 470 U. S. 1025 (1985). There we held that improper remarks by the prosecutor—in which he expressed his personal belief that the defendant was guilty—did not constitute reversible error under the standard properly applicable. On remand, a divided panel of the Court of Appeals reinstated its prior judgment. 794 F. 2d 1132 (1986). We granted certiorari, 479 U. S. 1083 (1987), to consider whether the remarks violated the Fifth Amendment,[4] and if so,

---

[3] "In trial of all persons charged with the commission of offense against the United States . . . the person charged shall, at his own request, be a competent witness. His failure to make such a request shall not create any presumption against him." 18 U. S. C. § 3481.

[4] Concomitant with the protections of the Fifth Amendment are those afforded by § 3481. See n. 3, *supra*. For many years, the prohibition on adverse comment concerning a defendant's failure to testify was grounded solely in § 3481. See *Wilson* v. *United States*, 149 U. S. 60 (1893). Since that time, however, the scope of the Fifth Amendment has been expanded to encompass in large part the terrain previously occupied solely by § 3481. See *Griffin* v. *California*, 380 U. S. 609 (1965). In circumstances such as these, the two provisions are generally construed in a parallel fashion. *Id.*, at 613–614 (quoting a passage from *Wilson* and concluding: "If the words 'Fifth Amendment' are substituted for 'act' and for 'statute,' the spirit of the Self-Incrimination Clause is reflected"); see also *United States* v. *Hasting*, 461 U. S. 499, 504–508 (1983).

whether the violation constituted plain error. Because we conclude that there was no constitutional error at all, we do not reach the plain-error issue.

In *Griffin* v. *California, supra,* the defendant, who had not testified, was found guilty by a jury of first-degree murder. The prosecution had emphasized to the jury in closing argument that the defendant, who had been with the victim just prior to her demise, was the only person who could provide information as to certain details related to the murder, and yet, he had "'not seen fit to take the stand and deny or explain.'" *Id.*, at 611. In accordance with the California Constitution, the trial court had instructed the jury that although the defendant had a constitutional right not to testify, the jury could draw an inference unfavorable to the defendant as to facts within his knowledge about which he chose not to testify. *Id.*, at 610. This Court reversed the conviction ruling that the prosecutor's comments and the jury instruction impermissibly infringed upon the defendant's Fifth Amendment right to remain silent:

> "[Comment on the refusal to testify] is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another." *Id.*, at 614 (citations omitted).

The Court said that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Id.*, at 615.

We think that the Court of Appeals' holding in this case rests both upon too broad a reading of *Griffin* and upon too restrictive a reading of the closing comments of respondent's counsel. Taking up the second of these points first, we think the reasoning of the opinion of the Court of Appeals necessarily rests on the assumption that the references by respondent's counsel to the Government's failure to provide respondent an opportunity to "explain" were directed only to the period during which the offenses were being investigated, and not the trial itself. Respondent understandably mirrors this position in his brief here. While we agree that defense counsel's remarks *could* have been interpreted in this manner, we do not think that an appellate court may substitute its reading of ambiguous language for that of the trial court and counsel. The colloquy quoted earlier shows that the trial court, immediately after hearing counsel's comment, understood them to mean that the Government had not allowed respondent to explain his side of the story either before or *during* trial. While respondent now contends that this interpretation is incorrect, he did not offer, while the matter was being considered by the trial judge, the explanation which he now supports. If counsel's remarks were, as respondent now argues, so clearly limited to the pretrial period, we think it unusual, to say the least, that counsel would have stood silently by when the trial court made clear its contrary interpretation. We accept what we regard as a reasonable interpretation of the remarks adopted by the trial court.

We hold that the prosecutor's statement that respondent could have explained to the jury his story did not in the light of the comments by defense counsel infringe upon respondent's Fifth Amendment rights. The Court of Appeals and respondent apparently take the view that any "direct" reference by the prosecutor to the failure of the defendant to testify violates the Fifth Amendment as construed in *Griffin*. We decline to give *Griffin* such a broad reading, because we think such a reading would be quite inconsistent with the

Fifth Amendment, which protects against compulsory self-incrimination. The *Griffin* court addressed prosecutorial comment which baldly stated to the jury that the defendant must have known what the disputed facts were, but that he had refused to take the stand to deny or explain them. We think there is considerable difference for purposes of the privilege against compulsory self-incrimination between the sort of comments involved in *Griffin* and the comments involved in this case.

In *Baxter* v. *Palmigiano*, 425 U. S. 308, 319 (1976), we stated that "*Griffin* prohibits the judge and prosecutor from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt." See also *Lakeside* v. *Oregon*, 435 U. S. 333, 338 (1978). In the present case it is evident that the prosecutorial comment did not treat the defendant's silence as substantive evidence of guilt, but instead referred to the possibility of testifying as one of several opportunities which the defendant was afforded, contrary to the statement of his counsel, to explain his side of the case. Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* holds that the privilege against compulsory self-incrimination is violated. But where as in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege.

> "Under *Griffin* . . . it is improper for either the court or the prosecutor to ask the jury to draw an adverse inference from a defendant's silence. But I do not believe the protective shield of the Fifth Amendment should be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case." *United States* v. *Hasting*, 461 U. S. 499, 515 (1983) (STEVENS, J., concurring) (citation omitted).

The principle that prosecutorial comment must be examined in context is illustrated by our treatment of a Fifth Amendment claim in *Lockett* v. *Ohio*, 438 U. S. 586 (1978). We quickly dismissed the argument that the prosecutor had violated the defendant's right to remain silent when he repeatedly remarked that the evidence was uncontradicted. We did not need to decide whether such comment was generally improper, because in that case "Lockett's own counsel had clearly focused the jury's attention on her silence, first, by outlining her contemplated defense in his opening statement and, second, by stating to the court and jury near the close of the case, that Lockett would be the 'next witness.'" *Id.*, at 595. We concluded: "When viewed against this background, it seems clear that the prosecutor's closing remarks added nothing to the impression that had already been created by Lockett's refusal to testify after the jury had been promised a defense by her lawyer and told that Lockett would take the stand." *Ibid.*; cf. *United States* v. *Young*, 470 U. S. 1 (1985); *Darden* v. *Wainwright*, 477 U. S. 168 (1986).[5]

"[The] central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, *United States* v. *Nobles*, 422 U. S. 225 (1975) . . . ." *Delaware* v. *Van Arsdall*, 475 U. S. 673, 681 (1986). To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another. The broad dicta in *Griffin* to the effect that the Fifth Amendment "forbids . . . comment by the prosecution on the accused's silence," 380 U. S., at 615, must be taken in

---

[5] In *United States* v. *Young* and *Darden* v. *Wainwright*, we concluded that statements by the prosecutor which inflamed the jury, vouched for the credibility of witnesses, or offered the prosecutor's personal opinion as to the defendant's guilt were improper, but we held that, in context, those statements did not necessitate reversal. In contrast, a reference to the defendant's failure to take the witness stand may, in context, be perfectly proper.

the light of the facts of that case. It is one thing to hold, as we did in *Griffin*, that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence. There may be some "cost" to the defendant in having remained silent in each situation, but we decline to expand *Griffin* to preclude a fair response by the prosecutor in situations such as the present one.

The judgment of the Court of Appeals is

*Reversed.*

JUSTICE KENNEDY took no part in the consideration or decision of this case.

JUSTICE BLACKMUN, concurring in part and dissenting in part.

I agree with JUSTICE MARSHALL when he concludes that the prosecutor's comments constituted error under *Griffin* v. *California,* 380 U. S. 609 (1965). I also share his conclusion that the considerations taken into account by the Court in determining that no error occurred should have been weighed, instead, in assessing whether the prosecutor's error qualified as plain error, requiring reversal despite the absence of a contemporaneous objection. See *post,* at 42. I write separately, however, because I think the Court of Appeals' determination that the prosecutor's error constituted plain error may well be wrong. I fear that the flaws in that court's plain-error analysis, as I read it, may be attributable to confusion generated by this Court's recent opinion in *United States* v. *Young,* 470 U. S. 1 (1985), and its direction to reconsider the present case in the light of *Young.* 470 U. S. 1025 (1985).

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed. Rule Crim. Proc. 52(b). "[C]onsiderations

of fairness to the court and to the parties and of the public interest in bringing litigation to an end" have led this Court to except from the contemporaneous-objection requirement only errors that are "obvious" or "otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States* v. *Atkinson,* 297 U. S. 157, 159–160 (1936). See also *United States* v. *Frady,* 456 U. S. 152, 163, n. 14 (1982) (plain error "to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result"). While this Court has emphasized that the doctrine is to be invoked only rarely, it generally has avoided articulating a strict formula for other courts to follow in applying the doctrine. Cf. *Engle* v. *Isaac,* 456 U. S. 107, 135 (1982) (plain-error analysis characterized as "vague inquiry").

In *United States* v. *Young,* however, the Court was presented with a lower court's decision finding plain error which the Court determined had been reached without considering whether the defendant had been prejudiced by the error. In pinpointing where it thought the lower court had gone wrong, this Court broke down the plain-error inquiry into two parts: whether the error "seriously affected 'substantial rights,'" and whether the error "had an unfair prejudicial impact on the jury's deliberations." 470 U. S., at 17, n. 14. While any application of the plain-error doctrine necessarily includes some form of prejudice inquiry, the Court's attempt to isolate that inquiry without giving it any substantive definition may have produced more mischief than clarity. See *id.,* at 36 (STEVENS, J., dissenting). The present decision below, I believe, is an example of this mischief.

In analyzing whether the prosecutor's improper remarks at trial constituted plain error, the Court of Appeals tracked *Young's* two-pronged analysis: the Court found, first, that the remarks affected a substantial right, and, second, that the effect of the error was not proved, beyond a reasonable doubt, to be harmless. 794 F. 2d 1132, 1137 (1986). In so

dividing the inquiry into these two parts, however, the Court of Appeals appears to have taken the constitutional nature of the error into consideration twice—both in finding the right at issue substantial and in following the lenient standard for prejudice used to determine whether properly preserved constitutional errors are harmless. See *Chapman* v. *California*, 386 U. S. 18, 24 (1967) (where court or prosecutor commits constitutional error, reviewing court "must be able to declare a belief that [the error] was harmless beyond a reasonable doubt"). Accounting for the constitutional magnitude of the error is, of course, appropriate. See *Weems* v. *United States*, 217 U. S. 349, 362 (1910) (court less reluctant to find plain error "when rights are asserted which are of such high character as to find expression and sanction in the Constitution or bill of rights"). I am troubled, however, by the Court of Appeals' apparent double counting of the constitutional nature of the error, for it threatens to render meaningless the contemporaneous-objection requirement in the context of constitutional error. Under the Court of Appeals' analysis, constitutional error, whether or not objected to at trial, always would be subject to the more sensitive prejudice standard set out in *Chapman*.

To clear the confusion reflected in the Court of Appeals' application of the plain-error standard "in light of *Young*," this Court should either continue on the path it started down in *Young* and formulate a test for plain error that articulates the prejudice standard to be applied,* or, in the alternative,

---

*In formulating that prejudice standard, the Court might look to the standard applied by some Courts of Appeals in assessing whether nonconstitutional errors are harmless, see, *e. g.*, *United States* v. *Davis*, 657 F. 2d 637, 640 (CA4 1981) (citing *Kotteakos* v. *United States*, 328 U. S. 750, 765 (1946), for the proposition that "[t]he test for harmlessness for nonconstitutional error is whether it is probable that the error could have affected the verdict reached by the particular jury in the particular circumstances of the trial"), or to the standard alluded to in JUSTICE STEVENS' dissent in *United States* v. *Young*, 470 U. S. 1, 35, 37 (1985) (plain error

it should make clear, by reasserting the plain-error doctrine's lack of rigid definition, that its language in *Young* is not to be interpreted as a test. This latter course may be more true to the doctrine's purpose of allowing courts to single out the rare case in which allowing a conviction to stand would severely undermine "the fairness, integrity or public reputation of judicial proceedings." *United States* v. *Atkinson*, 297 U. S., at 160. Either course, however, would clarify for other courts their role in determining what errors, unnoticed at trial, warrant reversal. Because "the proper course" to follow "[w]hen we detect legal error in a lower court's application of the plain-error or harmless-error rules . . . is to set forth the appropriate standards and then remand for further proceedings," *United States* v. *Young*, 470 U. S., at 30–31 (opinion concurring in part and dissenting in part), I would vacate the Court of Appeals' judgment and remand the case after clarifying how the plain-error doctrine is to be applied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

In practical terms, the erosion of the *Griffin* rule that the Court today sanctions is modest: the Court's holding is tailored to address only prosecutorial comments that are "a fair response to a claim made by defendant or his counsel," *ante*, at 32. Presumably, defendants and their counsel need only refrain from claiming that the Government denied them an opportunity to testify in order to insulate themselves from prosecutorial comment on the failure to testify. Only such claims are capable of provoking the prosecution to "fairly respon[d] to an argument of the defendant by adverting to that silence." *Ante*, at 34. But however slight the impact of today's decision, the Court's faithlessness to the bright-line rules of *Griffin* v. *California*, 380 U. S. 609 (1965), and *Wil-*

---

where error "obviously prejudicial," and prejudice of sufficient degree to warrant reversal).

*son* v. *United States,* 149 U. S. 60 (1893), is unsettling and unwarranted.   I therefore dissent.

The Court styles its decision as a refusal to expand the rule of *Griffin.*   It rejects as unduly broad respondent's reading of *Griffin* to prohibit any direct reference by the prosecutor to the defendant's failure to testify.   But *Griffin* lays down exactly this prohibition, and it does so in no uncertain terms. The final words of the opinion in *Griffin* read: "We . . . hold that the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."   380 U. S., at 615.   See also *id.,* at 614, n. 5 ("Our decision today [is] that the Fifth Amendment prohibits comment on the defendant's silence").   We repeatedly have recognized the categorical nature of the *Griffin* rule in subsequent decisions.[1]   Respondent's position thus represents a straightforward and orthodox reading of the controlling law.

Moreover, because this case involves a federal prosecution, the prosecutor's comments must also satisfy the statutory requirements of 18 U. S. C. § 3481, which we construed in *Wilson* v. *United States, supra.   Wilson's* longstanding prohibition on prosecutorial comment is,. if anything, more plainly categorical than the rule set down in *Griffin:* "To pre-

---

[1] See, *e. g., United States* v. *Hasting,* 461 U. S. 499, 507 (1983) (*Griffin* "interpreted the Fifth Amendment guarantee against self-incrimination to mean that comment on the failure to testify was an unconstitutional burden on the basic right"); *Jenkins* v. *Anderson,* 447 U. S. 231, 235 (1980) (*Griffin* "prevents the prosecution from commenting on the silence of a defendant who asserts the right" not to testify); *Mackey* v. *United States,* 401 U. S. 667, 673 (1971) (*"Griffin . . .* construed the Fifth Amendment to forbid comment on defendants' failure to testify, thereby removing a burden from the exercise of the privilege against compulsory self-incrimination and further implementing its purpose"); *United States* v. *Jackson,* 390 U. S. 570, 583, n. 25 (1968) (In *Griffin,* "the Court held that comment on a defendant's failure to testify imposes an impermissible penalty on the exercise of the right to remain silent at trial"); *Stovall* v. *Denno,* 388 U. S. 293, 300 (1967) (referring to the "no comment rule of *Griffin").*

vent [any adverse presumption from the defendant's failure to testify,] *comment, especially hostile comment,* upon such failure must necessarily be excluded from the jury. The minds of the jurors can only remain unaffected from this circumstance *by excluding all reference to it.*" 149 U. S., at 65 (emphasis added). The statement by the prosecutor in this case that respondent "could have taken the stand and explained it to you" is undeniably a comment on respondent's exercise of his constitutional right not to testify. The statement thus violated the statutory rule of *Wilson* as well as the constitutional standard of *Griffin.*

The underpinnings of today's decision are difficult to discern. The Court freely offers its conclusion that "[w]e think there is considerable difference . . . between the sort of comments involved in *Griffin* and the comments involved in this case," *ante,* at 32, but it is far less forthcoming with its reasoning. At times, the Court's opinion appears to flirt with a constitutional distinction under *Griffin* between prosecutorial comment that invites the jury to treat the defendant's silence as substantive evidence of guilt and other prosecutorial comment on the failure to testify. No such distinction can be found in the text or the animating principle of *Griffin.* The passages from *Griffin* that the Court cites addressed California's practice of permitting *the trial court* to instruct the jury that it could draw an unfavorable inference from the accused's failure to testify. We recognized that "[w]hat the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another." *Griffin,* 380 U. S., at 614. The *Griffin* opinion suggests no similar distinction with regard to comments by the prosecution. Indeed, its holding explicitly rejects such a distinction: "[T]he Fifth Amendment . . . forbids *either* comment by the prosecution on the accused's silence *or* instructions by the court that such silence is evidence of guilt." *Id.,* at 615 (emphasis added).

At other points in the opinion, the crux of the Court's hold-ing appears to be its assumption that the prosecution's com-ments were made in response to improper argument from defense counsel. First, the Court's premise is problematic. Respondent's counsel could "fairly" have provoked the pros-ecutorial comment in this case only if he had suggested that the Government had prevented respondent from taking the stand at trial. Respondent maintains, however, that his counsel argued only that the Government had prevented him from explaining his position during its pretrial investigation, not during the trial itself. This interpretation appears from the record to be the most, if not the only, reasonable one.[2] More fundamentally, the Court's suggestion that whether a comment violates *Griffin* depends on whether it is a response to the defense is muddled. A comment may well be a re-sponse to the defense and nevertheless be precisely the kind of statement that our holdings in *Griffin* and *Wilson* were designed to eliminate. If, for example, a defendant's counsel argues at trial that the defendant failed to take the stand in order to protect another person, and the prosecution re-sponds that the true explanation is that the defendant is guilty as sin, the prosecution's comment responds to the de-fense, but it nevertheless invites the jury to infer guilt from the defendant's decision not to testify.[3] Such a comment

---

[2] Most of defense counsel's controversial statements refer outright to the Government's failure to allow respondent to explain his actions during the preindictment investigation. The balance, although admittedly more ambiguous, are also best seen in that light. Respondent's argument is nevertheless troublesome, because, as the majority points out, it does not take account of the apparent understanding of the prosecution and trial court. But rather than address this tension in any cogent way, the Court simply "accept[s] what we regard as a reasonable interpretation of the re-marks adopted by the trial court." *Ante*, at 31. It does so even though the trial court never expressly made this interpretation and the Court of Appeals' understanding is the more reasonable.

[3] Indeed, this hypothetical chain of events bears more than a passing resemblance to this case. In response to counsel's claim that the Govern-

violates *Griffin* under any reasonable interpretation of that case.

The breadth of the categorical bright-line rule of *Griffin* and *Wilson* is not a simple matter of convenience or administrability. Rather, it rests on a theory that today's decision threatens to erode. As the Court explained in *Griffin*, "comment on the refusal to testify . . . cuts down on the privilege by making its assertion costly." *Griffin*, *supra*, at 614. The commonsensical premise of *Griffin* and *Wilson* is that the practice of prosecutorial comment on the failure to testify tends inherently to penalize a defendant for exercising his constitutional right not to take the stand. It is no doubt possible to conceive of a particular comment that would impose no penalty on a particular defendant in the eyes of a particular jury, but, as I argue below, that undertaking properly goes to the harmfulness, rather than the existence, of *Griffin* error. More importantly, the truly benign comment on the failure to testify is far less frequent than the offhand reference or subtle innuendo that imposes an unmistakable, if not always obvious, cost on the assertion of the Fifth Amendment privilege. *Griffin*, and *Wilson* before it, responded to this pervasive threat with a general prophylactic rule. As the author of *Griffin* explained: "In *Griffin* . . . we held that

---

ment had not given respondent a chance to explain, the prosecution paraded respondent's failure to testify before the jury: "He could have taken the stand and explained it to you, anything he wanted to." 716 F. 2d 1095, 1096 (1983). That statement varies only subtly, if at all, from the bald references condemned in *Griffin* v. *California*, 380 U. S., at 611, "[t]hese things he has not seen fit to take the stand and deny or explain"—and *Wilson* v. *United States*, 149 U. S., at 62, "if I am ever charged with a crime, . . . I will go upon the stand . . . and testify before Heaven to my innocence." The character of the statement at issue here thus is quite similar to that condemned in *Griffin* and *Wilson*. The focus on whether a comment is responsive therefore could sanction a blatant violation of *Griffin*. This is so because whether a prosecutorial comment imposes a cost on a defendant's assertion of his Fifth Amendment privilege is not necessarily related to whether the comment is a response to the defense.

the Fifth Amendment guarantee against self-incrimination prohibits a prosecutor from commenting to the jury upon the defendant's failure to testify at his trial.   Such a practice would place a price on the defendant's invocation of his constitutional privilege—a price that would seriously undermine the value of that privilege." *Burt* v. *New Jersey*, 414 U. S. 938, 938 (1973) (Douglas, J., dissenting from denial of certiorari).   *Wilson* similarly rejects a case-by-case analysis in favor of a general prophylactic ban: "To prevent such presumption being created, comment, especially hostile comment, upon such practice must necessarily be excluded from the jury."   149 U. S., at 65.   See also *Lakeside* v. *Oregon*, 435 U. S. 333, 344 (1978) (STEVENS, J., dissenting) (Although the probability that the jury will draw an unfavorable inference from the defendant's failure to testify "can never be eliminated, *Griffin* stands for the proposition that the government may not add unnecessarily to the risk taken by a defendant who stands mute") (footnote omitted).

That is not to say that every comment by the prosecution on the defendant's failure to testify occasions a reversal of an ensuing conviction.   This Court recognized as much in *Chapman* v. *California*, 386 U. S. 18, 21–24 (1967) (*Griffin* violation may be harmless error if the court believes beyond a reasonable doubt that the violation did not contribute to the jury's verdict).   My fundamental objection with the Court's analysis is that it confuses the issue whether a constitutional error has occurred with the analytically distinct issue whether the constitutional error is harmless, or, as in a case like this one where no contemporaneous objection was made, whether the error is plain.   The considerations that guide the Court's opinion may help identify whether *Griffin* error is reversible, but they should not enter into the analysis whether *Griffin* error has occurred.

Nor do I necessarily dispute the Court's statement that "prosecutorial comment must be examined in context." *Ante*, at 33.   I agree that under our precedents the com-

ments in this case may be evaluated against the trial court's and prosecution's apparent perception that respondent's counsel had offered an inaccurate suggestion that the Government had barred his client from testifying at trial. But this Court set out the framework for that evaluation in *United States* v. *Young*, 470 U. S. 1 (1985), and we previously indicated that it applied to this case. The prosecutor in *Young*, in response to unethical argument from defense counsel, interjected personal impressions into his argument to the jury. The Court recognized that the argument was improper but found that it was not plain error meriting reversal: "Viewed in context, the prosecutor's statements, although inappropriate and amounting to error, were not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *Id.*, at 16. The teaching of *Young* is that improper argument that viewed in context only "rights the scales" after improper argument from the other side sometimes will not rise to the level of plain error. *Id.*, at 14. In this case, we vacated the Court of Appeals' first reversal of respondent's conviction and remanded for reconsideration in light of our intervening opinion in *Young*. See 716 F. 2d 1095 (1983), vacated and remanded, 470 U. S. 1025 (1985). The obvious premise of that order was that the prosecutor's comments in this case were error under *Griffin*, but the Court of Appeals was to determine whether the error was plain in the context of defense counsel's argument. Thus, we already have recognized that the "context" of an argument is relevant for determining whether it is reversible error, not for determining whether it in fact violates the bright-line standard of *Griffin*. The Court today muddies *Griffin* analysis by straying from that distinction.

The Court ultimately attempts to justify its decision by an appeal to the truth-finding function of the criminal trial. The Court cites this function as the central purpose of the trial and writes that "it is important that both the defendant and the prosecutor have the opportunity to fairly meet the

44

evidence and arguments of one another." *Ante*, at 33. This rationale could mean one of two things, neither of which legitimately can support the Court's holding. First, the Court could mean that the prosecutor's statements in this case were not error because they aided the jury in its central purpose of determining whether respondent was guilty of mail fraud. This, however, is only another way of admitting that the prosecutor's comments invited the jury to infer guilt from respondent's silence, in clear violation of *Griffin*. If this is the kind of "truth-finding" the Court has in mind, the quick answer to the Court's concern is that our constitutional scheme presupposes that the exercise of Fifth Amendment rights may make it more difficult to discover whether the defendant is guilty as charged; the impediment to the jury's truth-finding function that the Court finds irksome is a matter of precious design. See *Mackey* v. *United States*, 401 U. S. 667, 673 (1971) (Fifth Amendment "privilege 'is not an adjunct to the ascertainment of truth,' but is aimed at serving the complex of values on which it has historically rested") (citing *Tehan* v. *United States ex rel. Shott*, 382 U. S. 406, 416 (1966)). *Griffin*'s ban on prosecutorial comment on the failure to testify may impose a social cost, but the acceptance of this cost is a prized achievement which separates our system from an "'inquisitorial system of criminal justice.'" *Griffin*, 380 U. S., at 614.

The other meaning that the Court's appeal to the criminal trial's truth-finding function could have is that the prosecutor's comments were not meant to bear on respondent's guilt but merely made the jury aware that the Government had not barred respondent from taking the stand. Perhaps such a vindication of the Government's honor and the principles of fair play has its place in the criminal justice system and may be taken into account in evaluating whether a particular constitutional violation is reversible error. In my estimation, however, this interest would rarely be significant enough to

subordinate the defendant's right to an unfettered exercise of his privilege not to testify. Moreover, this interest can be vindicated by less burdensome alternatives, such as sustaining an objection from the prosecution or perhaps undertaking a separate disciplinary proceeding against a dissembling attorney. But in any event, the Court's appeal to the truth-finding function is no justification for its determination that the prosecution's comments were "perfectly proper." *Ante,* at 33, n. 5. That conclusion, in fact, is unjustifiable; the prosecution's comments were not perfectly proper under either *Griffin* or *Wilson.* Perhaps they were not reversibly improper, but that, as I have indicated, is a separate question.

The Court's concluding comments reveal a belief that it simply would be unfair not to permit the prosecution to offer a "fair response . . . in situations such as the present one." *Ante,* at 34. This gut feeling may be the final explanation for today's decision. But this Court should be more circumspect before bending constitutional principles in the service of what it takes to be the fairer result in an individual case. Whether or not the Court's adulteration of *Griffin* and *Wilson* produces a fairer result here (and there is good reason to believe it does not), it tends to undermine a defendant's constitutional privilege not to testify. "The Fifth Amendment privilege is 'as broad as the mischief against which it seeks to guard,' and the privilege is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence.'" *Estelle* v. *Smith,* 451 U. S. 454, 467–468 (1981) (citations omitted; footnote omitted). As the Court itself recognizes, see *ante,* at 34, the comments in this case imposed a penalty on respondent for his decision not to take the stand. They also ran afoul of the express prohibitions of both *Griffin* and *Wilson.* The fair judicial response, rather than validating such comments, should be to reject them as violative of the Fifth Amendment. I dissent.