920 F.2d 936
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 William Roger JONES, Plaintiff-Appellant,
v.
Kenneth DUCHARME, Defendant-Appellee.
 No. 90-35398.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 6, 1990.*
Decided Dec. 10, 1990.
 Appeal from the United States District Court for the Western District of Washington; Carolyn R. Dimmick, District Judge, Presiding.
 W.D.Wash., 759 P.2d 1183.
 AFFIRMED.
 Before GOODWIN, Chief Judge, and EUGENE A. WRIGHT and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 William Roger Jones appeals the district court's denial of his petition for habeas corpus.[1] He challenges the imposition of a 280-month sentence following his jury conviction of murder in the first degree while armed with a deadly weapon. Jones argues that his fifth and sixth amendment rights were violated when the state court allowed the prosecution's rebuttal witness to testify regarding Jones' assertion of his privilege against self-incrimination. Jones further contends that he was denied his right to a speedy trial. We reject Jones' claims and affirm the judgment.
 
 
 3
 The facts of this case are set forth in detail in State v. Jones, 759 P.2d 1183 (Wash.1988) (en banc), and only briefly summarized here.
 
 
 4
 On February 15, 1985, Jones and Pauline Rodde met in a Seattle tavern. After drinking for several hours, they returned to Jones' apartment. When Rodde resisted Jones' advances, he strangled her until she fell unconscious and then stabbed her repeatedly in the chest. Jones thereafter contacted the police and confessed to Rodde's murder.
 
 
 5
 A jury rejected Jones' insanity defense and convicted him of first degree murder. Jones appealed to the Washington Court of Appeals, alleging that the trial court erred in two ways: first, it allowed the state psychiatrist to testify in violation of both Jones' constitutional right to counsel and his privilege against self-incrimination, and second, it failed to dismiss for violation of his statutory right to a speedy trial. In State v. Jones, 743 P.2d 276 (Wash.App.1987), the appeals court held that the psychiatrist's references to Jones' exercise of the fifth amendment[2] did not violate his constitutional rights because Jones' own expert witness initiated discussion of the subject. The court further ruled that the trial court correctly allowed a 78-day competency evaluation period to be added to the expiration of Jones' waiver of his right to a speedy trial.[3] Jones carried his appeal to the Washington State Supreme Court, which rejected both of his arguments. See State v. Jones, 759 P.2d 1183 (Wash.1988).
 
 
 6
 Jones next filed a petition for writ of habeas corpus, and he again alleged that his constitutional and statutory rights had been violated. Following appellee's motion for summary judgment, the district court dismissed Jones' petition in an order dated April 20, 1990. The district court concluded that the claimed violations of his fifth and sixth amendment rights were without merit and held that Jones failed to demonstrate any federal constitutional violation in his alleged deprivation of a speedy trial.
 
 1. Fifth Amendment Claims
 
 7
 Jones argues that his fifth amendment rights were violated when Dr. Mayers, the State's clinical psychologist, told the jury that Jones had exercised his prerogative to remain silent during their interviews. Dr. Mayers testified as follows:
 
 
 8
 And [Jones] stated, unless the defendant's psychiatrist is allowed to complete his evaluation and diagnosis, the defense will not be able to present a psychiatric defense at his trial. Therefore, he believes he has a right, based on his Fifth Amendment right against compulsory self incrimination, not to participate in the evaluation....
 
 
 9
 It's a rare individual, indeed, who makes reference to his Fifth Amendment rights, and particularly in such an articulate manner. He was logical. He was certainly coherent. On the basis of [our] brief contact, he certainly was not floridly psychotic. There was absolutely no indication that he was suffering from any major mental illness.[4]
 
 
 10
 Jones relies on Estelle v. Smith, 451 U.S. 454 (1981), for his contention that it was improper for Dr. Mayers to testify regarding his sanity. In that case, the Court had to decide whether the admission of psychiatric testimony violated the defendant's fifth amendment privilege against self-incrimination because the defendant had not been advised of his Miranda rights. The Court held that a defendant must be advised of his right to remain silent before he undergoes a competency evaluation by a court-appointed psychiatrist. If the defendant invokes his fifth amendment rights, the psychiatrist may evaluate the defendant's competency and testify regarding those findings, but he cannot offer testimony concerning the defendant's sanity. Because Jones did not waive his right to remain silent during his meetings with Dr. Mayers, he argues it was error for her to testify concerning his sanity.
 
 
 11
 Jones' contentions, however, ignore his election to plead not guilty by reason of insanity. The Supreme Court has expressed the importance of allowing the State to present psychiatric testimony in those cases where the defendant chooses to couple an insanity plea with the invocation of his fifth amendment rights. "When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case." Estelle, 451 U.S. at 465.
 
 
 12
 The facts before us reveal no violation of Jones' fifth amendment rights. Dr. Mayers advised Jones of his fifth amendment privileges, and he invoked them. Moreover, Dr. Mayers did not testify regarding Jones' reliance on the fifth amendment until after the defendant's own expert witness, Dr. Lindsay, twice referred to this reliance on direct examination.[5]
 
 
 13
 Although the State is generally prohibited from commenting on a defendant's choice to remain silent, it can do so in rebuttal if the defense opens the door to that issue. The State does not violate the privilege against self-incrimination when the prosecutor's reference is made in response to a claim introduced by the defendant. See United States v. Robinson, 108 S.Ct. 864 (1988). Dr. Mayers testified only during the rebuttal phase of the State's case following Jones' presentation of his insanity defense. Not only did defense counsel cross-examine Dr. Mayers, but he also offered no objection during any portion of her testimony. Jones' alleged violations of his fifth amendment rights cannot be sustained on the record before us.
 
 2. Sixth Amendment Claims
 
 14
 Jones asserts that his sixth amendment rights were violated because of interviews conducted by State psychiatrists when he was without assistance of counsel. Jones relies on Estelle, 451 U.S. at 470, for the proposition that a defendant has a constitutional right to assistance of counsel prior to submitting to a pretrial psychiatric interview. The holding in Estelle, however, hinges upon the failure of defense counsel to be notified of a pending psychological examination and counsel's consequent inability to advise the defendant whether he ought to submit to the State's examination.
 
 
 15
 In the instant case, Jones had counsel prior to his competency evaluation and affirmatively chose not to participate in this psychiatric review. The sixth amendment affords the defendant an opportunity to consult with counsel and obtain advice concerning his participation, if any, in a psychiatric examination. See United States v. Garcia, 739 F.2d 440, 442 (9th Cir.1984). Provided these conditions are met, a defendant's sixth amendment rights will be satisfied. Such a finding is supported by the facts before us.
 
 3. Speedy Trial
 
 16
 Jones contends that his right to a speedy trial was violated when the court found that his trial commenced timely on December 26, 1985. Pursuant to Washington's speedy trial requirement, CrR 3.3(c)(1), Jones was required to be brought to trial within 60 days of his arraignment, i.e, on April 23, 1985. The sanction of dismissal with prejudice results when this requirement is not satisfied. CrR 3.3(i).
 
 
 17
 The State may be given additional time in which to begin a trial in certain circumstances that include "[a]ll proceedings relating to the competency of a defendant to stand trial, terminating when the court enters a written order finding the defendant to be competent." CrR 3.3(g)(1). Periods that are excluded under this rule do not count toward speedy trial time, with the effect that these permissible delays are added to the end of the 60 day period. Because Jones' competency proceedings took place between July 24 and October 10, 1985, 78 days were added to the statutory deadline.
 
 
 18
 Jones waived his speedy trial rights on separate occasions, which allowed the trial court to grant continuances that further extended the statutory deadline. CrR 3.3(h). The trial court granted the first delay on March 18, 1985, when Jones first waived the 60-day rule, and the delay continued through October 15, 1985, when the second extension of the waiver expired.
 
 
 19
 The trial court combined the speedy trial extensions authorized by CrR 3.3(g)(1) and CrR 3.3(h) by adding the 78 day period to the conclusion of Jones' waiver period. Jones contends that the trial court erred because it is allegedly improper to exclude the same time period twice when it qualifies under two separate exclusions. Jones' argument is supported by United States v. Godoy, 821 F.2d 1498, 1503 (11th Cir.1987), cert. denied, 484 U.S. 1044 (1988), which holds that double counting of excludable time cannot be permitted under the federal Speedy Trial Act, 18 U.S.C. Sec. 3161(b).
 
 
 20
 In ruling that each exclusion should be given independent effect, however, the trial court recognized that trial proceedings were placed in limbo while the court inquired into the defendant's competency to stand trial. During the competency determination period, both parties were prevented from conducting comprehensive trial preparation. Accordingly, the trial court properly extended the speedy trial deadline to December 26, 1985.
 
 
 21
 Washington is free to prescribe a speedy trial period so long as it is consistent with constitutional standards. See Barker v. Wingo, 407 U.S. 514, 523 (1971). The Supreme Court has adopted a balancing test for examining the constitutionality of a state's rule and has emphasized that speedy trial cases must be evaluated on an ad hoc basis. Id. at 530. To demonstrate that his rights have been infringed, Jones was obligated to show that a balancing of the relevant factors indicate that he was deprived of his speedy trial rights. In weighing the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant, we conclude that Jones' claim is without merit. Id.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The parties have not presented us with an excerpt of record
 
 
 [2]
 Because the nomenclature throughout the record collapsed the fourteenth amendment into the fifth amendment, we assume the reader will make the appropriate translation
 
 
 [3]
 Jones executed waivers of his speedy trial rights on March 18, 1985, June 7, 1985, and July 8, 1985. The waivers continued in effect without interruption from March 18 through October 15, 1985. State v. Jones, 759 P.2d at 1184
 
 
 [4]
 Dr. Mayer's testimony was based on a series of meetings she held with Jones in the King County Jail and at the Western State Hospital
 
 
 [5]
 Dr. Lindsay stated that it was difficult to assess the reports from Western State Hospital "because [Jones] plead the Fifth Amendment, and so [the prosecution's experts] were left with simply observing him...." In response to a question concerning a conversation with Jones, Dr. Lindsay stated "[Jones] described his experience at Western State Hospital in which he plead the Fifth Amendment."