16 F.3d 401
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 Herbert A. FOWLER, II, Petitioner, Appellant,
v.
WARDEN, NEW HAMPSHIRE STATE PRISON, Respondent, Appellee.
 No. 93-1668.
 United States Court of Appeals,
First Circuit.
 February 15, 1994
 
 Appeal from the United States District Court for the District of New Hampshire
 Jeffrey R. Howard, Attorney General, and Mark D. Attorri, Assistant Attorney General, on brief for appellee.
 D.N.H.
 AFFIRMED.
 Before Breyer, Chief Judge, Torruella and Selya, Circuit Judges.
 Per Curiam.
 
 
 1
 Petitioner Herbert Fowler is appealing the district court's order denying his petition for writ of habeas corpus. After reviewing the record and trial transcripts, we have concluded that the district court correctly determined that there are no grounds for granting Fowler's request for relief, and so we affirm.
 
 
 2
 Fowler first claims that the trial court erred by permitting the state to pose on re-direct certain questions to Sergeant James Barthelmes, the state police officer in charge of the crime scene. The state asked Barthelmes whether defense counsel had asked him to make certain measurements or undertake certain studies of evidence found at the murder scene. Fowler alleges that the re-direct examination violated his right to remain silent and suggested to the jury that he had a duty to produce evidence. The transcript shows that, during the cross-examination which preceded the state's re-direct, defense counsel had attempted to show that Barthelmes should have performed such measurements or studies. On re-direct, the prosecutor responded by trying to show that, if such measurements or studies had been significant, the defense could have asked the police to undertake them itself.
 
 
 3
 We have no doubt that the jury was not confused as to who bore the burden of proof in this murder trial. After the court gave preliminary instructions to the jury pool on the state's burden of proof, each juror was individually voir-dired as to his or her understanding of the relevant legal standards. Defense counsel essentially queried each juror whether he or she understood that the defendant was presumed innocent, that the state bore the burden of proving the defendant's guilt beyond a reasonable doubt, and that the defense had no obligation to testify or to present any evidence on his own behalf, and each juror responded affirmatively. Moreover, during his cross-examination of Barthelmes, which preceded the state's re-direct, defense counsel had responded to Sergeant Barthelmes's statement that defense counsel or anyone else could have obtained the measurements from him by reminding Barthelmes (and hence the jury) that "Sergeant, I don't have to do anything."[1]
 
 
 4
 Thus, the prosecutor's attempt to show that the defense had not sought the measurements or studies responded to defense counsel's own suggestions that those measurements or studies should have been made, and the jury was unlikely to have understood from his questioning of Barthelmes that the defense bore the burden of proving Fowler's innocence. The prosecutor confined his questions on re-direct to the specific suggestions for investigation made by defense counsel during his cross-examination, made no explicit reference to defendant's failure to testify, and did not otherwise say or suggest that the defense's failure to ask the police to undertake certain measurements or studies constituted substantive evidence of guilt. Therefore, the prosecutor's re-direct examination was a lawful and fair response under United States v. Robinson, 485 U.S. 25, 32 (1988) (the prosecutor's comment had not treated the defendant's silence as substantive evidence of guilt, but had referred to defendant's opportunity to testify at trial in countering defense counsel's own suggestion that defendant had not been given an opportunity to tell his story, and so was a "fair response" to defendant's claim and did not violate the privilege against self-incrimination).
 
 
 5
 Fowler also claims that it was error for the court not to grant his counsel's request for a mistrial or curative instructions with respect to Sergeant Barthelmes's responses on re-direct examination. As we have said, the state's re-direct examination of Barthelmes was not improper. Accordingly, it was not error for the trial court to decline to call a mistrial or to issue curative instructions.
 
 
 6
 Finally, Fowler says that the re-direct examination of Barthelmes, together with certain closing comments by the prosecution, shifted the burden of proof to him and violated his right against self-incrimination. The first allegedly improper closing comment came at the very outset of the prosecutor's closing argument when the prosecutor asked the jury whether "the defense [has] presented you with any reasonable alternative to the one conclusion that all the evidence in this case points to?" Upon objection by defense counsel, the court reminded the jury "that the burden of proof is always on the State in any criminal case. The defendant does not have to prove his innocence or any other fact."
 
 
 7
 The prosecutor's query to the jury, in isolation, appears problematic, but context is critical in determining whether statements by the prosecution have violated a defendant's privilege against self-incrimination. See United States v. Lilly, 983 F.2d 300, 307 (1st Cir. 1992). Here, the transcript suggests that the prosecutor was responding to the defense counsel's closing argument, which had outlined seriatim the "reasonable doubts" the defense saw in the prosecution's case against Fowler, and which had suggested alternative scenarios, e.g., that a third party may have murdered the victims during a robbery attempt, or that the shotgun shells had been planted at the murder scene after the murders. If so, the comment was arguably permissible fair response. We need not decide that question, however, because the trial court promptly instructed the jury as to the burden of proof after the prosecutor's query to the jury, and so cured any constitutional impropriety in his question. Lilly, supra, 983 F.2d at 308 (prompt curative instruction from the court may be a "satisfactory antidote" to an impermissible comment by the prosecutor).
 
 
 8
 The second allegedly improper closing statement by the prosecutor came when the prosecutor addressed defense counsel's specific criticisms of Roger Klose, the state's expert witness who had linked the shotgun shells found at the murder scene with Fowler's shotgun. The prosecutor pointed to one of the defense's arguments-that Klose should have brought photographs showing that marks on the shells found at the scene matched marks on shells fired from Fowler's gun. After explaining why photographs would not have helped the jury, the prosecutor said: "That's the extent of the defense's attack on Roger Klose's conclusions and it's a pretty sorry effort. The defense has done nothing to try to call into question or to demonstrate-." At that point, defense counsel objected, but the court permitted the prosecutor to continue. The prosecutor then finished his thought, commenting that "[t]he defense has done nothing to show that Roger Klose's opinions are anything other than what they purport to be; valid, accurate conclusions, drawn on the basis of training, experience and expertise." Thus, the context makes clear that no constitutional impropriety took place. The prosecutor was arguing that the defense's criticism of the state's expert witness had not undermined the conclusions reached by the expert; he was not attempting to suggest that the defense had failed in some obligation to present evidence of Fowler's innocence. Accordingly, the prosecutor's comments were a fair response to the defense's specific suggestion of weakness in the expert's testimony.
 
 
 9
 Because we find no merit in Fowler's claims, we need not consider the state's alternative argument that Fowler has brought his habeas claims too late.
 
 
 10
 Affirmed.
 
 
 
 [1]
 We also note that, in his closing, the defense commented that the jury was "well aware" of the respective burdens of the parties, and reminded the jury members of their statements on voir dire that they would not expect the defense to present evidence and would not draw adverse inferences from Fowler's failure to testify. The relevant legal standards were also reiterated in the court's closing instructions