**UNITED STATES of America, Appellee,**

v.

**Frederick L. SMITH, Appellant.**

**No. 93–3179.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 7, 1994.

Decided Dec. 23, 1994.

A.J. Kramer, Federal Public Defender, Washington, DC, argued the cause for appel-

lant. On brief was Robert L. Tucker, Asst. Federal Public Defender, Washington, DC.

Linda I. Marks, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. On brief were Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Asst. U.S. Atty., Washington, DC.

Before WALD, SILBERMAN and HENDERSON.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellant Frederick Lee Smith seeks reversal of his narcotics convictions on the grounds that the trial court erroneously failed to instruct the jury on both "identification" and "mere presence" and that the prosecutor impermissibly commented on Smith's failure to testify. For the reasons set out below, we reject these contentions and affirm the appellant's convictions.

■ On appeal from a criminal conviction, we must view the evidence in the light most favorable to the government, allowing it the benefit of all reasonable inferences that may be drawn from the evidence and permitting the jury to determine the weight and credibility of the evidence. *United States v. Smith,* 964 F.2d 1221, 1222 (D.C.Cir.1992); *United States v. Butler,* 924 F.2d 1124, 1126 (D.C.Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 205, 116 L.Ed.2d 164 (1991). So viewed, the record reveals the following facts.

Shortly before midnight on November 2, 1991, Metropolitan Police officers Michael Tuz and Philip McNichol, while on foot patrol in Southeast Washington, saw Smith, dressed in a jumpsuit, standing near the corner of a church building. About an hour later they noticed him in the same spot, this time standing with another individual.* The officers approached the pair and spoke briefly with Smith. After the conversation, the officers set up an observation post behind a nearby fence approximately 30–60 yards from where Smith was standing. According to the officers, the area around Smith was illuminated by floodlights on the church building, pole lights in its parking lot and at least one streetlight.

While watching Smith and his companion through binoculars, Tuz saw several individuals approach Smith, receive something from him, then depart. Each time, Smith appeared to remove an object from inside his jumpsuit. Eventually, a third person joined Smith and his companion and the three then walked over to a white 1963 Impala parked nearby. Smith removed a small canister from his jumpsuit and placed it inside the car's trunk. All three persons then got inside the car, with Smith in the driver's seat.

As Smith was preparing to drive away, another individual approached the car and Smith got out. He reopened the trunk, removed an object from the canister inside and handed it to the newcomer who, after holding the object up to the light from a nearby streetlight, gave Smith some money. The two officers then ran toward the car. When Smith saw them approaching, he quickly got back into the car and sped off with his two companions. Tuz radioed for assistance and two other officers stopped the Impala a short distance away. When Tuz reached the car a few minutes later, he opened the trunk and saw a brown jumpsuit in which he discovered a canister and a plastic bag, both of which contained cocaine base (crack). A later search of the car produced a digital scale, $569.00 in cash and various papers, including a court summons and the car's registration, bearing Smith's name. Police technicians measured the distance from where the car had originally been parked to a nearby elementary school at 898.5 feet.

Smith was indicted and tried on one count of possessing crack with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(2)(B)(iii) and one count of possessing crack with intent to distribute within 1,000 feet of a school in violation of 21 U.S.C. § 860. At trial Smith's primary defense was that, given the time of night, the dim lighting and the distance from the observation post to

---

* Officer Tuz testified that the second individual was also present when the officers first spotted Smith.

the church, the officers could not have accurately observed the identity or the actions of the person allegedly dealing drugs. The jury nevertheless convicted Smith of both counts and, on September 14, 1993, the judge sentenced him to concurrent terms of 78 months' imprisonment. Smith now appeals his convictions on the three grounds enumerated above. We affirm.

■■■■ Smith first asserts that the trial judge erred in failing to comply with trial counsel's request "to give a separate instruction concerning the issue of identification." 11/15 Trial Tr. vol. 1 at 14. Circuit precedent requires that an identification instruction be given when the evidence reveals some "special difficulty" in a witness's identification of the defendant as the perpetrator of the crime. *See United States v. Taylor*, 997 F.2d 1551, 1558–59 (D.C.Cir.1993); *United States v. Boney*, 977 F.2d 624, 632 (D.C.Cir. 1992). In light of the visibility defense offered below, this case may present the kind of special difficulty requiring an identification instruction. Assuming, without holding, that it does, we nevertheless conclude that any error in omitting the instruction is harmless.

"As a general rule, the refusal to give an instruction requested by a defendant is reversible error only if 'the instruction (1) is substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense.'" *Taylor*, 997 F.2d at 1558 (quoting *United States v. Grissom*, 645 F.2d 461, 464 (5th Cir.1981)). Under this standard, the failure to give the identity charge cannot be reversible error because it did not seriously impair Smith's defense.

■■■■ In evaluating prejudice inherent in the failure to give an identification charge, we must "take[ ] into account that in the circumstances of a particular case, the proof, contentions and general instructions may have so shaped the case as to convince us that in any real sense the minds of the jury were plainly focused on the need for finding the identification of the defendant as the offender proved beyond a reasonable doubt."

*United States v. Telfaire*, 469 F.2d 552, 555–56 (D.C.Cir.1972). Such was the case here. First, despite the absence of a specific identification instruction, the trial court's charge repeatedly directed the jurors that the government must prove beyond a reasonable doubt that the *defendant* committed the crimes charged. *See* 11/15 Trial Tr. vol. 2 at 35, 36, 37, 38, 39, 40–41. We have previously found that similar instructions negated the inference of prejudice arising from omission of an identification charge. *See Jones v. United States*, 361 F.2d 537, 540–42 (D.C.Cir. 1966). Further, the defense counsel took every opportunity at trial to emphasize the allegedly poor visibility—in cross-examination of the officers, in direct examination of defense witnesses and in closing argument. *Cf. United States v. Shelvy*, 458 F.2d 823, 824 (D.C.Cir.1972) (finding failure to give identification charge "harmless" where "any uncertainties in the witnesses' identifications were thoroughly aired by defense counsel on cross-examination and emphasized in his summation to the jury"). Given defense counsel's trial strategy and the content of the judge's general instructions, we can but assume the jury considered and rejected the visibility defense before convicting Smith. Accordingly, we conclude the lack of a specific identification instruction did not substantially impair Smith's ability to present his defense.

■■■■ Smith next asserts his conviction must be reversed because the trial judge failed to charge the jury that mere presence near, or knowledge of, contraband cannot by itself establish possession. This challenge also fails for want of prejudice. The jury charge as delivered made it clear that the jury could convict Smith only if it found he "knowingly," "intentionally," "voluntarily," and "purposely" committed the crimes charged. 11/15 Trial Tr. vol. 2 at 37–38. Thus, the jury was adequately apprised that more than mere proximity or knowledge was required to convict. Further, the repeated attempts by Smith's counsel throughout the trial to establish that his client, while present, did not himself participate in any narcotics transaction clearly focused the jury's attention on the issue the omitted charge

would have covered. Thus, we again conclude that the absence of the requested instruction did not seriously impair Smith's ability to conduct his defense and therefore provides no basis for reversal.

Finally, the appellant argues that the prosecutor improperly commented on Smith's decision not to testify when he stated in closing argument:

> I suppose the defense is suggesting that were we to ask Mr. Smith his response would be, I don't know how that scale got in my car. I don't know how this $500 got in my car. I don't know how these drugs got in my car. They just happened to be there.

> It's not Larry Smith's money. He took the stand. He did not claim the money. The juvenile was sitting in the back seat. This money is sitting in the front seat next to Mr. Smith.

To determine whether the prosecutor violated Smith's Fifth Amendment privilege against self-incrimination, we must examine the quoted language in context. *United States v. Robinson,* 485 U.S. 25, 32–33, 108 S.Ct. 864, 868–70, 99 L.Ed.2d 23 (1988). Doing so, we find no violation. While perhaps unhappily phrased, the prosecutor's remarks amounted to nothing more than a challenge to Smith's innocent bystander defense and as such constituted "a fair response to a claim made by defendant or his counsel." *See id.* at 32, 108 S.Ct. at 869. They did not " 'suggest[ ] to the jury that it m[ight] treat the defendant's silence as substantive evidence of guilt' " and therefore did not violate Smith's Fifth Amendment privilege. *Id.* (quoting *Baxter v. Palmigiano,* 425 U.S. 308, 319, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976)).

For the preceding reasons, the judgment of the district court is

*Affirmed.*