53 F.3d 332
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Oscar RENFROE, Defendant-Appellant.
 No. 93-2003.
 United States Court of Appeals, Sixth Circuit.
 April 26, 1995.
 
 Before: KRUPANSKY, NELSON and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction on both counts of a two-count indictment charging the defendant with (a) conspiracy to possess cocaine with intent to distribute it and (b) distribution of the cocaine. On appeal the defendant contends that: (1) the trial court should have acquitted him because the evidence was insufficient to support a conviction; (2) the verdict was against the great weight of the evidence and a new trial should have been granted on that basis; (3) a search of the defendant's vehicle was unconstitutional because it was made without probable cause; (4) the district court erred in failing to hold a hearing on whether a government informant agreed to let the police record conversations he had with the defendant about the drug deal; (5) the government should have disclosed that its informant had been indicted for engaging in other illicit drug transactions; and (6) the prosecution was guilty of misconduct in commenting, during closing argument, on remarks made by the defendant after his arrest. Finding none of these contentions persuasive, we shall affirm the conviction.
 
 I.
 
 2
 The defendant, Oscar Renfroe, arranged to sell two kilograms of cocaine to the informant at the latter's place of business, an establishment known as the "Popcorn Palace." Government agents, who had learned of the proposed transaction by listening in on Mr. Renfroe's conversations with the informant, saw Renfroe enter the Popcorn Palace carrying a gray plastic bag. Soon thereafter he came out of the store with the informant, who was carrying a tin decorated with a picture of Santa Claus. The Santa Claus tin was placed in Mr. Renfroe's car, and the two men drove off. The agents received a signal from the informant that the cocaine had been delivered, whereupon they stopped the car, arrested Renfroe, and read him his Miranda rights. Inside the Santa Claus tin the agents found a gray plastic bag containing two kilograms of cocaine. Mr. Renfroe told the agents that the cocaine had been "fronted" to him by a third party whom Renfroe was supposed to pay that evening. Renfroe's statement about his source was consistent with what the agents had heard in the monitored conversations.
 
 II.
 
 3
 A claim of insufficient evidence turns on " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). "The government must be given the benefit of all inferences which can reasonably be drawn from the evidence," and "[i]t is not necessary that the evidence exclude every reasonable hypothesis except that of guilt." U.S. v. Adamo, 742 F.2d 927, 932 (6th Cir.1984) (internal citations omitted), cert. denied, 469 U.S. 1193 (1985).
 
 
 4
 Under this highly deferential standard, we conclude that the defendant's conviction must be sustained as to both counts. As far as the distribution count is concerned, the jury clearly had more than enough evidence to return a verdict of guilty. The tape recordings of Renfroe's conversations with the informant about the drug deal were highly incriminating, and Renfroe was apprehended with the two kilograms of cocaine in his car. His argument that the cocaine came from the informant is unavailing. As explained above, the government need not disprove every conceivable hypothesis except that of the defendant's guilt.
 
 
 5
 The claim of insufficient evidence to sustain the conspiracy conviction also fails. Mr. Renfroe's repeated references to a third party with whom he had an ongoing relationship and who distrusted the informant as an Arab, as well as Renfroe's statement that he had been "fronted" the cocaine and was expected to pay his source that evening, show more than a buyer-seller relationship. The jury could reasonably infer the existence of a conspiracy.
 
 
 6
 The contention that the district court abused its discretion in denying Mr. Renfroe's motion for a new trial fails for want of jurisdiction. A motion for a new trial based on the weight of the evidence must be made within seven days after the verdict, or within such further time as the court may fix during the seven-day period. Rule 33, Fed.R.Crim.P. Here the jury returned its verdict on May 5, 1993, and the motion for a new trial was not filed until May 21. The trial court not having granted an extension within the seven-day period, the court had no jurisdiction to consider the motion when it was finally filed.
 
 
 7
 The argument that the police lacked probable cause to search the car has no merit. The police knew, through the conversations they had monitored, that Renfroe intended to consummate the drug sale in the informant's store that day. What the police saw during their surveillance of the Popcorn Palace was consistent with a delivery of the two kilograms of cocaine that had been under discussion and a return of the cocaine to Renfroe's car. The suspicions of the police were confirmed when the informant gave a pre-arranged signal that the drug sale had occurred. Against this background, the search of the car and its contents, including the Santa Claus tin, was eminently reasonable. See Carroll v. U.S., 267 U.S. 132 (1925); Chambers v. Maroney, 399 U.S. 42 (1970); U.S. v. Ross, 456 U.S. 798 (1982); California v. Acevedo, 500 U.S. 565 (1991).
 
 
 8
 Mr. Renfroe contends that the district court abused its discretion in denying his motion for an evidentiary hearing on the question whether the informant consented to the monitoring and taping of the incriminating telephone conversations. The indicia of consent were abundant, however. The police testified that he consented, and the entire course of events bears that out. The informant kept the government informed as promised, and gave the agreed-upon signal at the appropriate time. The defendant proffered no evidence that the informant did not consent, and the district court did not abuse its discretion in denying the motion for an evidentiary hearing.
 
 
 9
 The defendant next argues that the government should have disclosed that the informant had been indicted for "double-dealing" (engaging in illicit drug transactions while working with the government). Giglio v. U.S., 405 U.S. 150 (1972), does not support the defendant's argument, because that case relates to government witnesses. The government never called the informant to testify against the defendant here. Brady v. Maryland, 373 U.S. 83 (1963), does not help the defendant, because the government presented the informant's indictment to the district court for in camera review, and the court ruled "that none of it is relevant in this case, that it is not exculpatory in this case, that it is not Brady material in this case."
 
 
 10
 The district court's determination that the indictment "is not Brady material" is subject to review only for abuse of discretion. See U.S. v. Hernandez, 31 F.3d 354, 361 (6th Cir.), cert denied, 115 S.Ct. 285 (1994). No such abuse occurred here, in our view. The informant's indictment on an unrelated drug transaction does not exculpate the defendant. The indictment might undermine the informant's credibility, but he never appeared before the jury. The defendant was free to probe into the informant's character, moreover, and fully availed himself of the opportunity to do so.
 
 
 11
 Lastly, the defendant argues that the prosecution violated his constitutional rights by commenting on his post-arrest remarks. As an initial matter, we conclude that the district court did not err in finding that the defendant understood his Miranda rights. After he received the Miranda warnings the defendant chose not to remain silent. He told the agents, "Yes, it was fronted to me. I got to pay it this evening and I am really scared for my family." Commenting on this remark in closing, the prosecution asked:
 
 
 12
 "Now if anything else were the case, wouldn't he say something else? Wouldn't he say something like, 'Well, I don't understand why you are arresting me. What did I do?' Or, 'I saw what you found. That wasn't mine.' Why would the first thing out of his mouth be, 'It was fronted to me. I got to pay it this evening. I am really scared.' Why is that? Because that's what happened. He got two kilos of 91 per cent pure cocaine fronted to him and he was scared that that source if it didn't get paid, might do something."
 
 
 13
 Although the Supreme Court's Fifth Amendment jurisprudence prohibits the government from extracting statements from defendants in violation of their Miranda rights, or making adverse comments about an election to remain silent (U.S. v. Robinson, 485 U.S. 25, 32 (1988)), neither of those situations obtained here. The prosecution merely quoted the defendant's own statement, properly received in evidence, and argued, in effect, that "he probably would not have said this if it were not true." This does not constitute prosecutorial misconduct.
 
 
 14
 AFFIRMED.