United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 19, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 06-70037

_____

LARRY DONNELL DAVIS,

                              Petitioner - Appellant,

                    versus

NATHANIEL QUARTERMAN, DIRECTOR,
TEXAS DEPARTMENT OF CORRECTIONS,
CORRECTIONAL INSTITUTIONS DIVISION,

                              Respondent - Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas, Amarillo
USDC No. 2:03-CV-00001

---

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

    Larry Donnell Davis was convicted of capital murder and
sentenced to death in March 1999 for the August 1995 murder of
Michael Barrow during the course of a robbery.  The district court
denied federal habeas relief, but granted a certificate of
appealability ("COA") authorizing Davis to appeal his claim that
the prosecutor violated his Fifth and Fourteenth Amendment rights
by commenting, during closing argument at the guilt-innocence phase

---

    [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of trial, on Davis's failure to testify.  We AFFIRM the district court's denial of habeas relief.

## I.

On August 28, 1995, Michael Barrow's parents found him dead inside his house in Amarillo, Texas.  He had suffered blunt force trauma to his face and head, as well as puncture and laceration wounds on his head, neck, and chest.  Bloody footprints were found on his upper torso.  An autopsy revealed that while Barrow was still alive, his sternum had been broken and his heart wall had been ruptured.  According to the medical examiner, it was likely that the rupture was caused by a stomp or kick to Barrow's chest.

The State introduced into evidence Davis's confession, in which he admitted his involvement in a gang plot to murder Barrow and steal his property.  In his confession, Davis stated that he was approached by Raydon ("Ray-Ray") Drew, and his brother, Donald Drew.  The Drew brothers needed money, and Ray-Ray wanted to earn a "teardrop" tattoo as a member of the Crips street gang.  They planned to kill Barrow, who was an acquaintance of theirs, and they offered Davis Barrow's stereo and chrome wheels from Barrow's car in exchange for his help.

Davis confessed that on the night of the murder he, Ray-Ray, and Donald Drew went to Barrow's house, along with two "look-outs".  Davis, Ray-Ray, and Donald Drew went inside Barrow's house and visited with him, then Ray-Ray hit Barrow on the head with a weight.  They tied his feet and moved him toward the bathroom.

2

Donald Drew left.  Ray-Ray asked Davis for his knife, and Davis gave it to him.  Ray-Ray then repeatedly stabbed Barrow with the knife.  When the knife handle broke, Ray-Ray continued stabbing Barrow with the blade.  Davis handed Ray-Ray an ice pick, and Ray-Ray then attacked Barrow with the ice pick.  While Davis and Ray-Ray were gathering Barrow's property to steal, they heard Barrow cough.  They discovered that he had untied his feet.  Davis hit Barrow in the mouth and held him down while Ray-Ray hit Barrow with a pipe.  Davis then got a butcher knife from Barrow's kitchen and gave it to Ray-Ray, who began to stab Barrow with it.  Despite all of these efforts, they still were not sure Barrow was dead, so Davis instructed Ray-Ray to stand on Barrow's neck.  Davis said that both he and Ray-Ray got blood on their shoes.

In his confession, Davis said that Ray-Ray acted alone in inflicting Barrow's fatal injuries.  He admitted, however, that he tied Barrow's hands with a bandanna, supplied Ray-Ray with each of the weapons he used to attack Barrow, and held Barrow down while Ray-Ray attacked him.  He further admitted that he encouraged Ray-Ray and gave him instructions on how to accomplish the killing.  He also admitted that he took some of Barrow's property and pawned it.

Acting on information provided by Davis, the police found the bloody shoes and clothing Davis had worn on the night of the murder in the attic of his girlfriend, Cynthia Green.  Green testified that on the night of the murder, she observed scratches on Davis's face, arms, and legs, and a bruise on his forehead.  She testified

3

further that she pawned jewelry, a television, a VCR, and a tape rewinder that Davis gave to her. She testified that he told her those items belonged to Ray-Ray. The items were identified as having been stolen from Barrow's home. Barrow's bank card was found in Davis's wallet, along with a pawn ticket that had belonged to Barrow.

Davis's former wife, Katherine Davis, testified that Davis confessed his involvement in the murder to her when she visited him in jail shortly after his arrest.

The State introduced photographs of a shoe print on Barrow's chest, in the spot where Barrow's sternum was broken. It also presented testimony that the shoe print on Barrow's chest matched the pattern on the bottom of the shoes worn by Davis on the night of the murder.

The defense strategy was to attempt to convince the jury that Davis was guilty of aggravated robbery or murder, but not capital murder, because he was only a passive participant. The prosecution, however, argued that the jury could convict Davis of capital murder, either by finding him to be a party to a felony murder, or by finding that Davis personally delivered the blow to Barrow's chest that ruptured his heart.

The jury found Davis guilty of capital murder. His conviction and sentence were affirmed on direct appeal. Davis v. State, No. 73,458 (Tex. Crim. App. October 23, 2002) (unpublished), cert. denied, 538 U.S. 1004 (2003). The Texas Court of Criminal Appeals

4

adopted the state court's findings of fact and conclusions of law and denied state habeas relief in December 2002.  Ex parte Davis, No. 54,457-01 (Tex. Crim. App. December 18, 2002).

Davis filed an application for federal habeas relief in July 2003.  The district court denied relief, Davis v. Quarterman, No. 2:03-CV-001 (N.D. Tex. July 31, 2006).  It granted a COA authorizing Davis to appeal its holding that the state court did not unreasonably apply federal law in holding that the prosecutor's improper, unconstitutional comment on Davis's silence was harmless error.

II.

Davis is not entitled to habeas relief unless the state court's adjudication of his prosecutorial misconduct claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d).

A.

Davis's claim is based on the following argument made by the prosecutor during rebuttal closing argument in the guilt-innocence phase of trial:

> And what you will determine is Larry Donell
> Davis' shoes stepped on that boy three times.
> Maybe more.  There was even one of his prints

5

on the pants.  Let me tell you, when this man with the teardrop on his eye, who sits here silently --

MR. CLARK:  Your Honor --

MR. MURPHY:  -- and sits there and watches while --

MR. CLARK:  That is a direct comment on his failure to testify, and we object.

THE COURT:  I will sustain the objection.

MR. CLARK:  Please instruct the jury to disregard that last comment.

THE COURT:  Ladies and gentlemen, please disregard the last statement.

MR. CLARK:  Move for a mistrial.

THE COURT:  and the Motion to --

MR. CLARK:  For mistrial is denied?

THE COURT:  Is denied.

MR. MURPHY:  -- watches while his attorneys get up here, and say:  What's going on here?  Has the state caused you to tell you this lie?  No.  The physical evidence brings you here.  And let me tell you what he did. He instructed him.  He provided him with three weapons, according to his own mind, and they talked about earning a teardrop just like he wears on his eye, before they ever got there. He provides him three weapons, as a party to this crime, and then he stoops down and he bursts the heart of this boy.  That's what the physical evidence shows you.  You want to get theatric?  I'm going to win the Oscar for the Best Actor or Best Attorney in a Prosecuting Role.  Because I am right.

Davis filed a motion for new trial claiming, <u>inter alia</u>, that the prosecutor's comment on his failure to testify violated his

Fifth and Fourteenth Amendment rights. The trial court conducted an evidentiary hearing, at which three witnesses testified for the defense. According to these witnesses, the prosecutor pointed his finger directly at Davis while making the challenged comments, his face was very red, he was speaking in a loud voice, and he was trembling and shaking when he finished his argument. The only witness for the state was the jury foreman, who testified that the jury was instructed not to consider Davis's failure to testify as evidence against him; that the court instructed the jury to disregard what the prosecutor said; and that, to his knowledge, the jury followed the trial court's instructions. The trial court denied the motion for new trial.

Davis raised the claim again on direct appeal. The Texas Court of Criminal Appeals held that the prosecutor made a direct comment on Davis's failure to testify and emphasized the comment when he raised his voice, walked toward Davis, and pointed directly at Davis. The court assumed, arguendo, that the trial court's instruction to disregard the improper comment did not cure the error. However, the court concluded that the comment amounted to harmless error because none of the criteria set forth in Anderson v. Nelson, 390 U.S. 523, 524 (1968) were met: The comment on Davis's failure to testify "entailed a single comment, the emphasis of the State's argument was the evidence, and there was no evidence that supported acquittal." Davis v. State, No. 73,458, at 5.

7

Davis presented this claim again in his state habeas application. The state habeas trial court concluded that the claim was not cognizable in the state habeas proceeding because it had been raised and rejected by the Court of Criminal Appeals on direct appeal. The Texas Court of Criminal Appeals held that the state habeas trial court's findings and conclusions were supported by the record, and denied state habeas relief.

Davis raised the claim again in his federal habeas application. The district court accepted the conclusion of the Texas Court of Criminal Appeals that the prosecutor's comment violated Davis's Fifth and Fourteenth Amendment rights, but held that the Texas court's decision that the prosecutor's error did not substantially and injuriously affect the verdict of guilt was not an unreasonable application of federal law. The district court reasoned:

> Given the brevity of the comment, the lack of evidence to support an acquittal and the overwhelming evidence of guilt in this case, it is not likely that the prejudicial effect of the prosecution's comment was significant. It was merely a single comment by the prosecution, and the trial court promptly ordered the jury to disregard the comment. The emphasis of the State's case, as well as the emphasis of the comment itself, was on the strength of the evidence. The prosecution did not rely on an inference of guilt from Davis's silence. To the contrary, the great thrust of the prosecution's case was the strength of the evidence, including evidence given by Davis himself in his confession. There is virtually no evidence that would have supported acquittal.

8

<u>Davis v. Quarterman</u>, No. 2:03-CV-001, at 15-16.

The district court held that Davis had failed to exhaust the issue of the effect of the improper comment on the punishment phase of his trial and, therefore, any claim regarding the punishment phase was procedurally defaulted.[1]  The district court stated further that, even if it were to consider the merits of the claim, the prosecutor's comment did not have a substantial and injurious effect on the punishment phase.  We now turn to consider the clearly established federal law governing claims such as this, and then consider whether the Texas courts' resolution of Davis's claim is contrary to, or an unreasonable application of, that law.

### B.

In <u>Griffin v. California</u>, the Supreme Court held "that the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."  380 U.S. 609, 615 (1965).  In <u>Chapman v. California</u>, 386 U.S. 18 (1967), the Court held that <u>Griffin</u> error is subject to harmless-error analysis.  <u>Id.</u> at 25;

---

[1]On appeal, Davis persists in asserting that the error also affected the outcome of the punishment phase of his trial.  The district court's grant of a COA is limited to the guilt-innocence phase of trial.  Accordingly, we will not consider Davis's argument that the prosecutor's improper comment during closing argument at the guilt-innocence phase affected the verdict at the punishment phase.  <u>See</u> <u>Goodwin v. Johnson</u>, 224 F.3d 450, 459 & n.6 (5th Cir. 2000).

9

see also United States v. Hasting, 461 U.S. 499, 505 (1983) (holding that the court of appeals erred by asserting its supervisory powers, and by not applying the harmless error doctrine, in reviewing claim of Griffin error). In 1968, the Court held that "comment on a defendant's failure to testify cannot be labeled harmless error in a case where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis of conviction, and where there is evidence that could have supported acquittal." Anderson v. Nelson, 390 U.S. at 523-24. In Brecht v. Abrahamson, 507 U.S. 619 (1993), the Court held that in habeas proceedings, the test for harmless error is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 623 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

The error of which Davis complains falls into the category of trial error, which "'occur[s] during the presentation of the case to the jury,' and is amenable to harmless-error analysis because it 'may ... be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial].'" Id. at 629 (quoting Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991)). Accordingly, Griffin errors, such as the one claimed by Davis, are reviewed for harmless error in the context of the entire record. See United States v. Robinson, 485 U.S. 25, 33 (1988).

C.

10

As we have noted, the Texas Court of Criminal Appeals applied Anderson v. Nelson, and concluded that the Griffin error in this case was harmless, because the comment was not extensive, an inference of guilt from silence was not stressed to the jury as a basis of conviction, and there was no evidence that could have supported acquittal. Based on our review of the entire record, we are satisfied that the state court's conclusion is neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

During individual voir dire, each person who was selected to serve on the jury was advised by the prosecutors that Davis had a constitutional right not to testify and that his failure to testify could not be considered as evidence of his guilt. All but one of those jurors was questioned on voir dire by the prosecutor who made the comments at issue.

At the close of all the evidence in the guilt-innocence phase, the trial court instructed the jury, orally and in writing, that:

> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded a defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him. In this case, the defendant has elected not to testify, and you are instructed that you cannot and you must not refer or allude to that fact throughout your deliberations, or take into consideration for any purpose whatsoever as a circumstance against the defendant.

The improper comment was an incidental statement in an argument by the prosecution that focused on the strength of the evidence against Davis.[2] The trial court promptly sustained defense counsel's objection to the improper comment and instructed the jury to disregard it. The prosecution did not urge the jury to infer that Davis was guilty because he failed to testify. Instead, the prosecution argued that Davis should be found guilty of capital murder based on the strength of the evidence against him, which included his confession. As the district court observed, and as we have confirmed based on our review of the record, there is virtually no evidence that would have supported acquittal. We fully agree with the district court that, considering the brevity of the comment, the very strong evidence of guilt, and the absence of evidence that would have supported an acquittal, the improper comment did not have a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, the state court did not unreasonably apply clearly established federal law when it concluded that the error was harmless.

_____

[2]The State argues that the prosecutor's comment was an invited reply to the defense closing argument and therefore did not violate the Fifth and Fourteenth Amendments. The Texas Court of Criminal Appeals held, however, that the comment was improper, and that "[t]he prosecutor's statement in conjunction with his physical actions was of such character that the jury would naturally and necessarily take it as such." Davis v. State, No. 73,458, at 4. That conclusion is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, we defer to the state court's conclusion that the challenged comment violated the rule established in Griffin.

12

## III.

For the foregoing reasons, the judgment of the district court denying federal habeas relief is

AFFIRMED.

13