[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10540

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 17, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-00242-KD-C-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM L. WILMOTH, SR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(April 17, 2012)

Before BARKETT, HULL, Circuit Judges, and HINKLE,[*] District Judge.

PER CURIAM:

This criminal case arises from the illegal dumping of grease. Grease can harm a public sewer system, causing blockages and overflows and thus adversely affecting navigable waters. Because of a history of difficulties, restaurants in Mobile, Alabama, must dispose of grease at appropriate sites, not through the public sewer system. Restaurants accomplish this by hiring contractors to transport the grease.

A grand jury indicted one such contractor together with its president and a manager—the appellant William L. Wilmoth, Sr.—on charges arising from the unlawful dumping of grease. One count charged conspiracy to violate the Clean Water Act and to commit mail fraud. Six substantive counts charged mail fraud. And 33 substantive counts charged intentional CWA violations. All of the charged offenses were felonies.

After a five-day trial, the jury convicted Mr. Wilmoth on the conspiracy count, acquitted him on the mail fraud counts and on five CWA counts, and on the other 28 CWA counts found him guilty of only a lesser included

_____

[*] Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida, sitting by designation.

offense—violating the CWA negligently, not intentionally. A negligent CWA violation is a misdemeanor. Mr. Wilmoth appeals, challenging the sufficiency of the evidence on the conspiracy count and the prosecutor's improper comment before the jury, "If Mr. Wilmoth wants to testify to this, that's fine." As part of the sufficiency argument, Mr. Wilmoth notes that he was acquitted of all the substantive felony charges, and he says this is inconsistent with the felony conspiracy conviction. After review and oral argument, we affirm.

I

Mr. Wilmoth asserts the evidence was insufficient to sustain the conspiracy conviction. He preserved the position by moving for a judgment of acquittal at the close of the evidence. We review *de novo* the sufficiency of the evidence to sustain a conviction, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Tampas*, 493 F.3d 1291, 1297-98 (11th Cir. 2007) (internal quotation marks and citation omitted). We will not reverse a conviction "unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. U.S. Infrastructure, Inc.*, 576 F.3d 1195, 1203 (11th Cir. 2009) (citations omitted).

The indictment identified two objects of the conspiracy: (1) to introduce

3

grease into a publicly-owned wastewater treatment facility in violation of the CWA, and (2) mail fraud.[1]  The CWA makes it a crime to knowingly discharge a pollutant into a publicly-owned wastewater treatment facility except in compliance with applicable regulations.  *See* 33 U.S.C. § 1319(c)(2)(A); 40 C.F.R. § 403.5(b)(8).  The mail-fraud statute, 18 U.S.C. § 1341, prohibits the use of the mails to implement a scheme or artifice to defraud.  Both objects are felonies.  Under 18 U.S.C. § 371, if the object of the conspiracy is a felony, the conspiracy is a felony.  But if the object of a conspiracy is a misdemeanor, the conspiracy is a misdemeanor.

On a conspiracy charge, the government must prove (1) there was an agreement to achieve an unlawful objective, (2) the defendant knowingly and voluntarily participated in the conspiracy, and (3) an overt act was performed in furtherance of the conspiracy.  *United States v. McNair*, 605 F.3d 1152, 1195 (11th Cir. 2010).  "[T]he existence of the agreement and a defendant's participation in the conspiracy may be proven entirely from circumstantial evidence."  *Id.*  And "[a] defendant may be found guilty of conspiracy if the evidence demonstrates he knew the essential objective of the conspiracy, even if he did not know all its details or played only a minor role in the overall scheme."

---

[1] The indictment originally charged two additional objects of the conspiracy.  The court struck one before the trial began.  The government dropped the other at the close of its case.

4

*Id.* at 1195-96 (internal quotation marks and citation omitted). Also, a "guilty verdict in a multi-object conspiracy will be upheld if the evidence is sufficient to support a conviction of any of the alleged objects." *United States v. Ross*, 131 F.3d 970, 984 (11th Cir. 1997) (citation omitted).

The evidence was easily sufficient to sustain a finding that Mr. Wilmoth conspired to intentionally violate the CWA. Mr. Wilmoth was the supervisor of four employees who testified that they either illegally dumped grease with Mr. Wilmoth's knowledge or were encouraged by Mr. Wilmoth to do so. Mike Edington testified that Mr. Wilmoth trained him on how to illegally dump grease and that on one occasion Mr. Edington dumped grease into a manhole at Mr. Wilmoth's direction and in his presence. Chad Bethea, Cameron Clark, and Mike McVay testified that when legal disposal sites were closed, Mr. Wilmoth told them to get the jobs done anyway, to "make something happen," and to get up with Mr. Edington on where to dump the grease. Yet another employee, William Ethridge, testified that he told Mr. Wilmoth that employees were illegally dumping grease but the practice continued.

To be sure, Mr. Wilmoth presented evidence that he confronted Mr. Edington about the illegal dumping and ultimately had a hand in Mr. Edington's firing. But the jury was entitled to believe the employees' testimony that Mr.

5

Wilmoth knew about and encouraged the dumping. On that view Mr. Wilmoth's later role in Mr. Edington's firing was simply an effort to avoid responsibility. In short, there was sufficient evidence to support a finding that Mr. Wilmoth conspired to intentionally violate the CWA.

The evidence was also sufficient to support a finding that Mr. Wilmoth conspired to commit mail fraud. Mail fraud consists of "(1) an intentional participation in a scheme to defraud a person of money or property, and (2) the use of the mails in furtherance of the scheme." *United States v. Downs*, 870 F.2d 613, 615 (11th Cir. 1989) (citation omitted). "The latter element is satisfied if the scheme's completion was dependent in some way upon information and documents passed through the mails and if the defendant acted with knowledge that the use of the mails would follow in the ordinary course of business or could reasonably be foreseen." *Id.* (citations and footnote omitted).

Just as the jury could rationally conclude that Mr. Wilmoth conspired to violate the CWA, the jury could also rationally conclude that Mr. Wilmoth intentionally participated in a scheme to induce customers to pay for the legal disposal of grease when in fact the grease was dumped. And the mails were used as part of the scheme. The contractor sent invoices and manifests through the mail to customers and received payments back through the mail.

6

To be sure, the jury acquitted Mr. Wilmoth of mail fraud and convicted him of only negligently violating the CWA.  Mr. Wilmoth asserts in effect that the conspiracy conviction is inconsistent with the verdict on the substantive counts.  But the inconsistency assertion fails based on the well established principle that in a criminal case, "inconsistency in a jury's verdict does not require reversal." *United States v. Brito*, 721 F.2d 743, 749 (11th Cir. 1983) (citations omitted).  "This is true even where the jury convicts a defendant of conspiracy to commit an underlying substantive offense but finds the defendant not guilty of committing the underlying offense."  *Id.*; *see also United States v. Powell*, 469 U.S. 57, 69 (1984).  That is precisely what happened here.  Thus even though the jury acquitted Mr. Wilmoth of mail fraud and of intentionally violating the CWA, the jury properly could—and did—convict him of conspiring to commit those offenses.

Mr. Wilmoth says this case is different because he was not acquitted of all the substantive counts; on some he was convicted of the lesser included misdemeanor offense of *negligently* violating the CWA.  Conspiring to commit a misdemeanor is a misdemeanor.  But there is no reason to believe the jury thought Mr. Wilmoth conspired only to commit a misdemeanor.  To the contrary, the jury instructions made clear that Mr. Wilmoth could be convicted of conspiring only to

7

commit mail fraud or to intentionally—not negligently—violate the CWA.

Mr. Wilmoth did not request—and the court did not give—an instruction on conspiracy to *negligently* violate the CWA. The election not to request such an instruction made sense. First, it is not at all clear that one can conspire to be negligent in circumstances like these. And second, a defendant often makes the tactical choice not to request a lesser-included instruction, opting to go for an outright acquittal. Mr. Wilmoth reasonably could have made that choice on the conspiracy count here.

One could speculate on why the jury convicted Mr. Wilmoth of conspiring to commit mail fraud and intentionally violate the CWA while acquitting him of the same substantive charges. But it would be just that: speculation. What is certain is that the jury was properly instructed on the conspiracy charge and found Mr. Wilmoth guilty based on evidence that was easily sufficient to sustain the charge. As a matter of well-settled law, the verdict on the substantive counts is not a basis for setting aside the conspiracy conviction.

## II

Mr. Wilmoth asserts that the district court erred by not granting a mistrial based on prosecutor Jeremy F. Korzenik's improper comment on Mr. Wilmoth's right to remain silent.

8

What happened was this. During his opening statement, Mr. Wilmoth's attorney was beginning to set out witness Clark's anticipated testimony. Defense counsel stated, "Clark wanted to take off and do things on his private time. He said I'm on commission and I can do what I want to. One day the evidence will show . . . ." Mr. Korzenik interrupted and said, "I object. If Mr. Wilmoth wants to testify to this, that's fine." The court promptly overruled the objection.

Mr. Korzenik's objection was inexcusable at several levels. It was a plainly unfounded objection to a perfectly proper opening statement setting out the testimony a witness was reasonably expected to give. It was a speaking objection in violation of the judge's instruction not to make speaking objections. And much more importantly, it was an improper comment on Mr. Wilmoth's right to remain silent.

Mr. Wilmoth, through his attorney, noted at the next opportunity outside the jury's hearing that this was an improper comment on silence. Mr. Wilmoth explicitly said he did not want the judge to grant a mistrial. But Mr. Wilmoth decided later the same day that he *did* want a mistrial. He so moved. The judge denied the motion. But the judge gave a curative instruction that was properly framed. Mr. Wilmoth did not object to the content of the curative instruction at the time and takes no issue with it now.

9

The Fifth Amendment forbids comments on a defendant's silence as evidence of guilt. *See Griffin v. California*, 380 U.S. 609, 615 (1965). In order to determine whether a prosecutor's statements violate the defendant's Fifth Amendment right against self-incrimination, the court must determine "whether a prosecutor's remarks were manifestly intended to urge the jury to draw an inference from the defendant's silence that he or she is guilty, or whether a jury would naturally and necessarily construe the prosecutor's remarks as inviting such an impermissible inference." *United States v. Thompson*, 422 F.3d 1285, 1299 (11th Cir. 2005). That determination must be made in light of the context in which the statement was made. *Id.* (citing *United States v. Robinson*, 485 U.S. 25, 31-33 (1988)). And because the district court "is in the best position to evaluate the prejudicial effect of a statement," we review the district court's denial of a mistrial for an abuse of discretion. *United States v. Delgado*, 321 F.3d 1338, 1346-47 (11th Cir. 2003) (internal quotation marks and citation omitted).

The government says that Mr. Korzenik's comment that Mr. Wilmoth could testify did not contravene the *Thompson* standard. But the comment could have had no purpose other than to suggest to the jury that Mr. Wilmoth could testify to whether Clark could take time off if he wanted to. And the comment is especially inexcusable because Mr. Korzenik had previously participated in a prosecution

10

involving an almost identical violation, this time by another prosecutor while Mr. Korzenik sat at the government's table as co-counsel. In *United States v. Lucas*, 516 F.3d 316 (5th Cir. 2008), the prosecutor said, while the defendant Thompson's attorney was cross-examining a government witness, "Your honor, he's just simply testifying. If they want to put Mr. Thompson on to say what happened. But he's testifying. I object to it." *Id*. at 349 n.131. The Fifth Circuit upheld the district court's denial of a mistrial but added, "That does not mean that we approve of this want of professionalism." *Id*. at 349. Like the Fifth Circuit, we do not approve this prosecutor's want of professionalism.

Also like the Fifth Circuit, we uphold the district court's denial of a mistrial. A defendant is not entitled to relief on appeal unless any constitutional error was "harmless beyond a reasonable doubt." *United States v. Hasting*, 461 U.S. 499, 510 (1983); *see also United States v. Guzman*, 167 F.3d 1350, 1353 (11th Cir. 1999) ("constitutional errors must be proven to be harmless beyond a reasonable doubt"). Furthermore, we have repeatedly said that a prosecutor's improper remark may be cured by an appropriate jury instruction. *See, e.g., United States v. McGarity*, 669 F.3d 1218, 1241-42 (11th Cir. 2012); *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009); *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007). "[W]hen a district court gives a curative instruction, the

11

reviewing court will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." *United States v. Delgado*, 321 F.3d 1338, 1347 (2003) (internal quotations and citations omitted). Here the improper remark came on the first day of a five-day trial, the district court promptly gave an appropriate curative instruction, and the evidence of guilt was substantial. The remark came after defense counsel's reference to Mr. Clark's being able to take time off from work. Mr. Korzenik's remark was therefore harmless beyond a reasonable doubt.

## III

The evidence was sufficient to sustain the verdict. And the prosecutor's inexcusable comment—"[i]f Mr. Wilmoth wants to testify to this, that's fine"—was harmless. Mr. Wilmoth was not entitled to a judgment of acquittal or new trial. The judgment is

**AFFIRMED.**