In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00054-CR
_____

**ELBERT PERRY JR. A/K/A ELBERT PERRY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 11-13027**

**MEMORANDUM OPINION**

A jury found Elbert Perry Jr. guilty of aggravated robbery, enhanced by prior convictions to habitual offender status. He received a punishment of 99 years in prison. He challenges the sufficiency of the evidence, he contends the prosecutor's jury argument was improper, and he argues ineffective assistance of counsel.

1

THE FACTS

Wanita Teno explained that she was home with her children on the night of the robbery; her husband had taken his mother to the hospital. After retrieving some school papers out of her car trunk, she walked back to the house. Perry ran up to her, called her by name, put a gun to her back, ordered her into the house, and told her that if she said anything he would shoot her. He was accompanied by a woman. Holding the gun on Wanita, Perry asked her where the safe was located in the house, and told her to get it. Wanita testified she handed the safe to him. Perry told her that if she said anything to her husband about the incident, Perry would come back and kill her. Wanita knew Perry. He had worked on their house.

With the safe and gun in his hands, Perry walked to the front door. At that moment, Wanita's husband returned home and opened the door. Perry pointed the gun at him and told him not to try anything. Attempting to run out of the house, Perry stumbled, dropped the safe and the gun, and fled. Wanita picked up the gun and fired at the woman accompanying Perry. The bullet did not hit the woman. The gun jammed, and Wanita dropped it. Her husband picked the gun up, put it in the mailbox, told Wanita to go in the house, and placed the safe inside the house. She called 911. Wanita testified she was terrified.

On cross-examination, defense counsel asked Wanita why, in the 911 call, she referred to the gun as her gun and why her husband in his call to 911 would mention that she shot her gun. Her explanation was that her adrenaline was rushing. And with that rush of adrenaline, she also was able to lift the safe down from the shelf. Wanita testified that she never owned a gun and that the gun was Perry's. She acknowledged that her husband is a convicted felon. She knew he could be convicted of a felony for having a gun. Wanita also acknowledged that her husband had been selling illegal DVDs out of the back of his car.

Bohannon Tevo ("Bo") testified to similar facts. He explained he "was hysterical, adrenaline running, nervous." He stated that as Perry left the house, Perry stumbled and dropped the safe. Bo testified that his wife somehow ended up with the gun, as Perry apparently dropped the gun along with the safe. Bo explained that Wanita fired the gun at Cynthia Thomas, and the gun jammed. Perry ran toward Cynthia's car. Bo explained that he retrieved the safe and the gun; he put the safe in the house and the gun in the mailbox outside their door. Bo called 911.

Bo testified he has two prior convictions for possession of a controlled substance, one nine years ago and one sixteen years ago. He completed both probations successfully.

Cynthia Thomas, who was also charged with aggravated robbery, testified for the prosecution as part of a plea agreement. Cynthia stated she was under the influence of PCP that night. Perry asked Cynthia to take him to get a DVD movie. He directed her to a specific house. Cynthia explained that Perry pulled out a gun, pointed it at her, and instructed her to do everything he told her to do. He told her to go up to the house and act like she had to use the restroom. Wanita let her in. Cynthia testified Perry was pointing the gun at both her and Wanita; he told Wanita to give him the safe. Cynthia testified Wanita was shaking and appeared "[t]errified." She got the safe and Perry took it. Cynthia testified that as they were going down the hall, she saw a man approach the front door. Cynthia ran out of the house. She heard a gunshot, but did not know who fired the gun. She started the car and drove off. The police stopped her car.

Keith Breiner, a detective with the police department, investigated the case. He interviewed Wanita, Bo, and Cynthia. He testified the safe was not checked for fingerprints, because the safe did not have a smooth surface. No fingerprints were recovered from the pistol. Breiner stated that "it's very rare that we get a fingerprint off a firearm normally because of the oil base on them."

4

SUFFICIENCY OF THE EVIDENCE

Perry argues he did not place Wanita in fear of imminent bodily injury and death by using and exhibiting a deadly weapon. Perry also argues the physical evidence does not link him to the gun or the safe. He contends that, when considered in conjunction with the 911 tapes, the testimony of Wanita and Bo is inconsistent regarding possession or ownership of the gun. Perry argues it could be inferred that the gun belonged to Wanita.

The standard for determining the sufficiency of the evidence under *Jackson v. Virginia* is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury resolves conflicts in testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13. From the testimony, the jury could reasonably conclude the gun belonged to Perry, and that Perry, by using a firearm while in the course of committing theft of property and with intent to obtain and maintain control of the property, intentionally and knowingly threatened and placed Wanita in fear of imminent bodily injury and death. We overrule Perry's sufficiency issue.

5

## JURY ARGUMENT

Perry argues that during closing argument the prosecutor commented on Perry's failure to testify. Under the federal and state constitutions, a defendant has a privilege not to testify. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011); *see also* U.S. Const. amend. V; Tex. Const. art. I, § 10. Article 38.08 of the Code of Criminal Procedure provides that a defendant's failure to testify on the defendant's own behalf may not be held against the defendant and that counsel may not allude to the defendant's failure to testify. Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005).

If another explanation for the prosecutor's remark is equally plausible, the reviewing court "'cannot find that the prosecutor manifestly intended to comment on the defendants' failure to testify[.]'" *Randolph*, 353 S.W.3d at 891 (quoting *United States v. Rochan*, 563 F.2d 1246, 1249 (5th Cir. 1977)). "[T]he implication that the State referred to the defendant's failure to testify must be a clear and necessary one." *Randolph,* 353 S.W.3d at 891. Moreover, a prosecutor's comments may be permissible if they are a "fair response" to the defendant's claims or assertions. *Id*. at 892 (quoting *United States v. Robinson*, 485 U.S. 25, 28-32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988)).

The prosecutor made the following comment to the jury, and defense counsel objected:

> [PROSECUTOR]: . . . I agree with [defense counsel] that really the only issue in this case, this happened in Jefferson County, Texas; . . . it was his client, Elbert Perry; it was their house; there was a theft that occurred. The only issue that is in contention is did the defendant have a gun and did he exhibit it against Mr. and Mrs. Teno and I agree with him on that.
>
> . . . . Everything I say and everything [defense counsel] said, we weren't there. We're not here to tell you what happened because we didn't see it.
>
> He tells you his client was there. Well, the State agrees with that; but [defense counsel] doesn't have evidence of that. He didn't provide any of the evidence that he told you during opening statement. He says there is two sides to the story. There is no evidence of anything he told you. He says –
>
> [DEFENSE COUNSEL]: Your Honor, I object to that being a direct comment on the defendant's failure to testify. He has no burden of proof and is covered by the presumption of innocence.
>
> . . . .
>
> THE COURT: Hold on. The objection is overruled. Ladies and gentlemen, again, let me instruct the jury that the statements in final argument, again, are not evidence. I've instructed you to that in writing; and, again, the statements by the attorneys are not evidence. The evidence comes from the witness chair and also exhibits that are admitted. The attorneys get to make comments in voir dire, opening statements, questioning of witnesses and final arguments but those have their particular places under the rules of procedure but you're going to make your verdict, your decision in your deliberations, based upon the evidence and the law that's given to you. And again, the law is provided by the instructions of the Court and the written instructions, jury charge, that has been read to you and has been provided to you in written form when you go to the deliberation room. With that, you may proceed.

Perry focuses on the prosecutor's statement that "[t]here is no evidence of anything he told you." He argues that the use of the word "he" clearly is a reference to Perry and his failure to testify. But the reference is to defense counsel and the remarks counsel made during his opening statement.

During that opening statement, defense counsel commented that "we believe the evidence is going to show the following[,]" and he provided examples of that evidence: alleged prior transactions when Perry would sell CDs to the Tenos and the Tenos could "produce illegal copies of CD[]s and sell them out on the streets"; various details concerning Wanita's alleged request to Perry to retrieve the safe from the shelf; her alleged dissatisfaction with the transaction and desire to have the safe back; and her alleged grabbing of her pistol out of her nightstand. During his closing argument and prior to the State's closing statement, defense counsel again referenced the safe and argued that Wanita could not remove it from the shelf and that she asked Perry to get it down for her. Defense counsel also argued during his closing statement that the gun belonged to the Tenos, and they would not admit ownership because Bo is a convicted felon.

The prosecutor's remarks were a response to the defendant's claims or assertions concerning the evidence. The jury would not necessarily and naturally take the prosecutor's language -- that there is no evidence of anything he told you --

8

as referring to the defendant himself or his failure to testify. Rather, the prosecutor pointed out that there was no evidence of the version of events defense counsel suggested in the opening statement. We overrule Perry's jury-argument issue.

INEFFECTIVE ASSISTANCE OF COUNSEL

In an amended brief, Perry contends trial counsel was ineffective, and should have filed pretrial motions. The record is silent as to why Perry's trial counsel did not file pretrial discovery motions. The mere failure to file pretrial motions, however, does not categorically constitute ineffective assistance. *See Autry v. State*, 27 S.W.3d 177, 182 (Tex. App.—San Antonio 2000, pet. ref'd); *Ryan v. State*, 937 S.W.2d 93, 104 (Tex. App.—Beaumont 1996, pet. ref'd).

To prevail on a claim of ineffective assistance, the appellant must meet the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Perry must show that (a) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (b) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687-88, 694; *Lopez*, 343 S.W.3d at 142. Appellant has the burden of proving by a preponderance

of the evidence that counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

There is a strong presumption that trial counsel's performance fell within the wide range of reasonable professional assistance. *Lopez*, 343 S.W.3d at 142. Counsel's deficiency must be affirmatively demonstrated in the trial court, and the reviewing court must not engage in "retrospective speculation." *Id*. The reviewing court cannot consider factual assertions that are outside the record. *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004). When direct evidence is not available, we assume trial counsel had a strategy "if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143. We review the totality of the representation and the circumstances of each case. *Id*. Because the record on direct appeal is usually inadequately developed, "claims of ineffective assistance of counsel rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Id.*

Perry argues that if trial counsel had filed pretrial motions he would have discovered that Wanita and Bo made certain pretrial "statements" that are important to the case, that the gun was not purchased by Perry, and that "perhaps" Wanita was the gun's owner. He asserts that the Tenos' testimony at trial was

inconsistent with the Tenos' prior "statements" regarding the ownership of the gun, and he characterizes their testimony as "governmental witness false testimony."

Keith Breiner, the police department detective who interviewed Wanita, Bo, and Cynthia prior to trial, testified the department makes "audio/video statements." The record does not contain the police interviews of these witnesses. We do not know if counsel reviewed them prior to trial, and we do not know whether counsel would have found them to be as favorable as appellant believes. *See Bone v. State*, 77 S.W.3d 828, 834-35 n.21 (Tex. Crim. App. 2002).

The record does contain the recordings of the 911 calls that Wanita and Bo made to the police dispatcher. Counsel cross-examined both Wanita and Bo regarding ownership of the gun, referenced the language in the 911 tapes, and presented the defensive theory that Bo and Wanita lied about the gun's ownership because of Bo's status as a convicted felon. Counsel also argued the issue of gun ownership to the jury.

In his brief on appeal, Perry states his trial attorney told him that no pretrial discovery motions were filed because Wanita and Bo did not make any statements, and therefore Perry should win the case. But there is nothing in the record to support Perry's claim that trial counsel made this statement to Perry. An ineffective

11

assistance of counsel claim must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813. We cannot speculate on matters not contained in the record.

Perry also argues that if trial counsel had "filed a motion for extraneous crimes[,]" counsel "would have investigated and prepared a different defense." The record is silent as to trial counsel's trial strategy in failing to file the motion. Perry references evidence from the punishment stage of the trial. Two witnesses testified Perry robbed them at gunpoint approximately eleven days before he committed the present offense. Trial counsel cross-examined the punishment-phase witnesses. In addition to their testimony, the jury also heard evidence during the trial's punishment phase of Perry's extensive criminal history. Perry pleaded "true" to having committed four prior felony offenses and two prior state-jail-felony offenses. Perry has not shown that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different or that the jury would have assessed a lesser sentence. Perry's issue alleging ineffective assistance of counsel is overruled. The judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

12

Submitted on May 30, 2013
Opinion Delivered July 10, 2013
Do Not Publish

Before McKeithen, C.J., Gaultney and Horton, JJ.