RENDERED:  SEPTEMBER 6, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0186-MR

ROBERT LARUE                                                 APPELLANT

                  APPEAL FROM TODD CIRCUIT COURT
v.           HONORABLE JOE W. HENDRICKS, JR., JUDGE
                  ACTION NO. 21-CR-00053

COMMONWEALTH OF KENTUCKY                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, GOODWINE, AND A. JONES, JUDGES.

ACREE, JUDGE:  A jury convicted Appellant, Robert LaRue, of first-degree assault pursuant to KRS[1] 508.010(1).  Now on appeal, Appellant contends the Commonwealth failed to produce enough evidence to support his conviction. Additionally, he alleges the Todd Circuit Court erred when it denied his motion for a mistrial.  Having reviewed the record, we affirm.

---

[1] Kentucky Revised Statutes.

## BACKGROUND

On February 3, 2021, Appellant stabbed his stepfather during an argument that escalated into a physical altercation. According to Appellant, he stabbed his stepfather in self-defense, as he believed his stepfather was going to shoot him.

Prior to this incident, Appellant moved into his mother's home having lost his job during the COVID-19 pandemic. Living in his mother's home, his stepfather set several rules for Appellant to live by. One of these rules was attending church regularly. According to Appellant, the altercation between Appellant and his stepfather began after Appellant decided he would not be going to Wednesday night church.

Appellant testified that his stepfather began yelling at him, telling Appellant he would be going to church. The two shouted at each other as their altercation escalated, and Appellant's mother called the police. Appellant went into his room, and his stepfather followed him. Appellant testified that his stepfather stated, "Come on big boy, I'll blow you away." It was undisputed at trial that Appellant's stepfather always carried a gun in his pocket, even in the home. When Appellant perceived his stepfather as reaching for his firearm, Appellant grabbed a nearby knife and, according to Appellant, began defending himself.

The stepfather's version of events differs from Appellant's version. He testified that the cause of the altercation was Appellant's derogatory comments to his mother. The two then fought about Appellant's decision not to go to church, but Appellant's stepfather feared Appellant would harm his mother, which is why he followed Appellant to his room. Upon entering the room, Appellant's stepfather did not reach for his gun. Unprovoked, Appellant began attacking him. The stepfather testified that Appellant said he would kill him.

Law enforcement arrived while Appellant was stabbing his stepfather. As police entered the home, they found Appellant on top of his stepfather with a knife in his hand. Upon instruction to drop the knife and exit the room, Appellant complied and remained compliant with all other requests from law enforcement.

Appellant stabbed his stepfather ten times in the shoulder and torso. His stepfather had to be airlifted to a hospital for treatment. His stepfather's blood pressure was low during the flight to the hospital and his blood oxygen level stayed around 80%. The medical records indicated that: "Even though the patient had multiple stab wounds scattered throughout the chest wall and flank areas, the only significant injury appears to be related to the right hemothorax. This has been addressed by placing a chest tube for decompression." At the time of the stabbing, Appellant's stepfather was on blood thinners.

Appellant presented his self-defense theory to the jury, but the jury convicted him of first-degree assault pursuant to KRS 508.010(1). The court sentenced Appellant to twelve-years' imprisonment.

Additionally, relevant to this appeal, during opening statements, the prosecutor stated: "Well, the defendant has a right to testify, it will be interesting to see how much he adds to his original statement from what he, but we'll leave that there." Appellant objected to this statement and moved the court for a mistrial, on grounds that the Commonwealth impermissibly commented on his rights not to testify and against self-incrimination. The Todd Circuit Court carefully considered the motion before denying it. Instead, the court admonished the jury to ignore the statement or any comment on the defendant's rights to testify or remain silent.

This appeal now follows.

## ANALYSIS

On appeal, Appellant challenges the sufficiency of the evidence the Commonwealth presented. Additionally, he contends the circuit court should have granted his motion for a mistrial. Finally, he alleges a *Moss*[2] violation, the facts of which we will address below.

---

[2] *Moss v. Commonwealth*, 949 S.W.2d 579 (Ky. 1997).

**1.** **The Commonwealth presented sufficient evidence for a reasonable juror to conclude Appellant caused a significant physical injury**.

Pursuant to KRS 508.010(1), for a jury to find a defendant guilty of first-degree assault, the Commonwealth must prove beyond a reasonable doubt that:

> (a) [The defendant] intentionally cause[d] serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or
>
> (b) Under circumstances manifesting extreme indifference to the value of human life [the defendant] wantonly engage[d] in conduct which create[d] a grave risk of death to another and thereby cause[d] serious physical injury to another person.

KRS 508.010(1) (emphasis added). A first-degree assault conviction under KRS 508.010(1)(a) or (1)(b) requires proof of a "serious physical injury."

Under KRS 500.080(15), the term "serious physical injury" is defined as a "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." KRS 500.080(15). This Court previously interpreted KRS 500.080(15) as "set[ting] a fairly strict level of proof which must be met by sufficient evidence of injury, medical and/or non-medical, taken as a whole, before an instruction on first-degree assault may be given." *Prince v. Commonwealth*, 576 S.W.2d 244, 246 (Ky. App. 1978) (emphasis omitted). Despite this strict standard, KRS 500.080 does not

require medical expert testimony to prove a serious physical injury to satisfy the evidentiary requirements of KRS 508.010(1). *Brooks v. Commonwealth*, 114 S.W.3d 818 (Ky. 2003); *see also Prince*, 576 S.W.2d at 246.

"When determining whether a defendant caused a 'serious physical injury,' the issue is not whether there was proof of an act that could cause 'serious physical injury.' The issue is whether there was proof of an act that did, in fact, cause 'serious physical injury.'" *Anderson v. Commonwealth*, 352 S.W.3d 577, 581 (Ky. 2011) (emphasis original) (citing *Commonwealth v. Hocker*, 865 S.W.2d 323 (Ky. 1993) (Leibson, J., dissenting)). This standard requires courts to engage in a case-by-case analysis to determine if a substantial risk of death exists based on "the totality of the evidence[.]" *Cooper v. Commonwealth*, 569 S.W.2d 668, 671 (Ky. 1978).

Here, the record demonstrates the Commonwealth introduced sufficient evidence to support the conclusion in the mind of a reasonable juror that Appellant inflicted a serious physical injury on his stepfather. Upon arrival of emergency responders, they found Appellant's stepfather covered in blood that came from actively bleeding wounds in his shoulder and chest. The bleeding was exacerbated by the stepfather prescribed use of blood thinners, which makes it harder for blood to clot wounds and stop bleeding. Additionally, his blood pressure was low due to the nature of the actively bleeding wounds; his blood

-6-

oxygen level was also only at 80%. Upon arrival to the hospital, doctors saw evidence of and subsequently found wounds causing internal bleeding. If left untreated, internal bleeding can result in death. The wounds here were, therefore, serious in fact and presented a serious risk of death. KRS 508.010(1)(b).

Thus, it was not unreasonable for the jury to conclude Appellant was guilty of violating KRS 508.010(1). The Commonwealth did produce sufficient evidence to support Appellant's conviction for first-degree assault.

**2.    The Commonwealth did not infringe on Appellant's constitutionally protected rights with his inappropriate comment during his opening statement.**

As the Kentucky Supreme Court noted: "'Not every comment that refers or alludes to a nontestifying defendant is an impermissible comment on his failure to testify,' *Ex parte Loggins*, 771 So.2d 1093, 1101 (Ala. 2000), and not every comment upon silence is reversible error." *Ragland v. Commonwealth*, 191 S.W.3d 569, 589 (Ky. 2006) (citations omitted).

In *Griffin v. California*, the United States Supreme Court held that the Fifth Amendment to the United States Constitution "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *United States v. Robinson*, 485 U.S. 25, 30, 108 S. Ct. 864, 868, 99 L. Ed. 2d 23 (1988) (quoting *Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233, 14 L. Ed. 2d 106 (1965)). On appeal, the "prosecutorial

comment must be examined in context[.]" *Robinson*, 485 U.S. at 33, 108 S. Ct. at 869. Additionally, "if there is another, equally plausible explanation for a statement, malice will not be presumed and the statement will not be construed as comment on the defendant's failure to testify." *Ragland*, 191 S.W.3d at 590 (citing *South Dakota v. Ball*, 675 N.W.2d 192, 200 (S.D. 2004)).

Admittedly, whether the Commonwealth impermissibly commented on Appellant's right not to testify or to remain silent is a close call. A review of the video record shows the circuit court grappled with whether to grant the motion for a mistrial. However, the Commonwealth's comment does not amount to a violation of Appellant's constitutionally protected rights.

In *Ragland*, the Commonwealth made the following statement during closing arguments: "We don't know where that shot was fired from. The only person who knows where that shot was fired from exactly is the person sitting in that chair over there [indicating Appellant] and he hasn't seen fit to tell us." *Ragland*, 191 S.W.3d at 588. The Kentucky Supreme Court held that this was not an impermissible comment on Defendant's decision not to testify. *Id.* at 589. The Court reasoned that, historically, courts distinguish between direct and indirect comments of the defendant's decision not to testify, whereby "'direct' comments upon a defendant's failure to testify . . . were usually held to be improper and prejudicial, and 'indirect' comments . . . were usually found not to warrant

-8-

reversal." *Id.* (citations omitted).  Generally, the Commonwealth violates a defendant's Fifth Amendment rights when it "invite[s] the jury to draw an adverse inference of guilt from that failure [to testify]." *Id.* at 590 (quoting *Robinson*, 485 U.S. at 33-34, 108 S. Ct. 869-70).  The Court concluded that the statement in *Ragland* could not be construed to suggest an inference of guilt based on the Defendant properly exercising his rights.  *Id.*  The Court categorized any plausible inference being "only in the most remote sense . . . as a comment upon Appellant's failure to testify at trial."  *Id.*

The Commonwealth did not violate Appellant's Fifth Amendment rights.  The Commonwealth's comment concerned whether Appellant would alter or add to his story if he chose to testify, not whether Appellant's decision not to testify should be used as evidence against him.  The inference in this comment, if there is one, is that the Defendant's testimony is not reliable because his story is changing.  Though, the Commonwealth's comment may be taken as implying the Appellant would testify, even this inference does not comment on whether his silence should be used as evidence against him.  The court admonished the jury, indicating that the Appellant did not have to testify, and instructed the jury to ignore the comment.  "[A] jury is presumed to follow an admonition . . . ." *Hoppenjans v. Commonwealth*, 299 S.W.3d 290, 292 (Ky. App. 2009).

The circuit court did not err when it denied Appellant's motion for a mistrial.

**3.    The Commonwealth committed an impermissible *Moss* violation when it repeatedly asked Appellant to call his mother a liar**.

During the Commonwealth's cross-examination of Appellant, the following exchange occurred:

> Q: Okay.  Now we heard from your mom that you had asked her for $20.  Did that happen?
>
> A: Not at all.
>
> Q: Okay, so your mother, everything she said up here about you asking for $20 and calling her a "cock-sucking bitch," that was a lie?
>
> A: That is correct.
>
> Q: You mom's just lying on the stand up here.
>
> A: Yes, yes, sir.

Appellant contends this line of questioning violates the principles outlined in *Moss v. Commonwealth*, 949 S.W.2d 579 (Ky. 1997).

The Kentucky Supreme Court stated:  "A witness should not be required to characterize the testimony of another witness, particularly a well-respected police officer, as lying."  *Id.* at 583.  In *Moss*, the defendant was "asked and badgered" into calling the Commonwealth's leading witness a liar.  *Id.*  The Court reasoned that this line of questioning was improper because "[s]uch a characterization places the witness in such an unflattering light as to potentially

undermine his entire testimony. Counsel should be sufficiently articulate to show the jury where the testimony of the witnesses differ without resort to blunt force." *Id.* Ultimately, the defendant in *Moss* did not preserve this for appeal, and the Court did not consider this violation to be palpable error. *Id.*

Here, Appellant did not object to this line of questioning, so this error is unpreserved, like the unpreserved line of questioning in *Moss*. We are bound by *Moss* in concluding if this was error, it was not palpable error and cannot be the basis for reversing a conviction. *Luna v. Commonwealth*, 460 S.W.3d 851, 880 (Ky. 2015) ("Although we are troubled by the Commonwealth's conduct of the cross-examination of Luna and cannot emphasize enough that blunt force is never an acceptable trial strategy, the error does not rise to the level of palpable, as we recognized in *Moss*. The Commonwealth's questioning did not create a palpable error."); *see also Parker v. Commonwealth*, 482 S.W.3d, 394, 406 (Ky. 2016).

## CONCLUSION

For the aforementioned reasons, we affirm.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Molly Mattingly
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky